THE STATE OF OHIO, APPELLEE, *v.* LANDRUM, APPELLANT.

[Cite as State *v.* Landrum (1990), 53 Ohio St. 3d 107.]

(No. 89-454—Submitted May 16, 1990—Decided August 15, 1990.)

108

*Richard G. Ward,* prosecuting attorney, for appellee.

*Randall M. Dana,* public defender, *S. Adele Shank* and *Thomas E. Phillips,* for appellant.

MOYER, C.J.      We have reviewed Landrum's thirty-one propositions of law, independently assessed the evidence relating to the death sentence, independently balanced the merged aggravating circumstances against the mitigating factors, and evaluated the proportionality of the sentence to those imposed in similar cases. As a result, we affirm the convictions and sentence of death.

## I
## Prosecutorial Misconduct

Propositions I, II and XVI all argue alleged misconduct by the prosecutor. In his first proposition of law, Landrum argues various comments by the prosecutor deprived him of constitutional rights against self-incrimination, and to counsel and due process. In response, the state denies impropriety, argues waiver because the defense did not object, and asserts that Landrum received a fair trial.

In final argument, the prosecutor disparagingly referred to Landrum's not guilty pleas. In September, Landrum had pled not guilty. The prosecutor stated: "[f]or the first time yesterday, he's changed his story and apparently now, he and his attorneys honestly are telling you, well, I'm guilty of some things. They're telling you I'm guilty of Aggravated Burglary even though I denied it when I talked to [Detective] Groves, even though I denied it when I came in and was called upon to enter a plea. Now, I'm going to tell the truth."

Landrum argues correctly that courts disapprove of penalties imposed for exercising constitutional rights. In *Doyle v. Ohio* (1976), 426 U.S. 610, the United States Supreme Court condemned prosecutors who attempt to impeach a defendant's trial testimony by cross-examination based on an accused's post-arrest silence and exercise of *Miranda* rights. *Griffin* v. *California* (1965), 380 U.S. 609, held that comments by prosecutors seeking to premise guilt findings on a defendant's failure to testify were not permissible.

In this case, the prosecutor improperly referred to Landrum's not guilty plea in pejorative terms. In effect, the prosecutor implied that Landrum was dishonest by pleading not guilty and then in his trial testimony admitting partial guilt. However, Landrum was legally and procedurally fully entitled to plead not guilty, rely upon the presumption of innocence, and require the state to prove its case. See Crim. R. 11. Yet, the prosecutor could argue that Landrum should not be believed on the stand because Landrum lied to the police after his arrest.

Landrum further claims that the prosecutor appealed to the jurors' passions and prejudices and attempted to secure a verdict by fear. When the prosecutor cross-examined Landrum, he handed him the kitchen knife and asked him to hold the knife just as he had that night. During final argument, the prosecutor admitted he may have startled the jury.

He informed the jury that, "I did that on purpose and I watched your reaction and I want you to think now about what your reaction was when you saw that defendant on the stand with that knife. Were you concerned? Were you startled? Did it shock you? Were you worried? Did you think you might be in danger or not? Sometimes our bodies tell us things before our minds do and if you had any of those feelings when Larry was setting [*sic*] on that stand with that's — with that weapon, I submit to you it was something inside of you telling you that he knows how to use it and he's willing to use it. If you had that feeling at all, I ask you to reflect back on what

you felt when you saw him setting [*sic*] there with that weapon."

In this case, defense counsel did not object at trial to the prosecutor's comment about the not guilty plea or the knife. We decline to invoke the plain error rule. "A claim of error in a criminal case can not be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial." *State* v. *Wade* (1978), 53 Ohio St. 2d 182, 7 O.O. 3d 362, 373 N.E. 2d 1244, paragraph one of the syllabus; accord *Scott* v. *State* (1923), 107 Ohio St. 475, 1 Ohio Law Abs. 405, 141 N.E. 19, paragraph two of the syllabus. See, also, Crim. R. 52(B). "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, paragraph three of the syllabus.

When the prosecutor handed the knife to Landrum and asked Landrum how he handled the knife that night, the prosecutor's conduct was not improper *per se*. Defense counsel did not object, and the prosecutor's hidden motives do not excuse the lack of objection. The cold record does not reflect theatrics as Landrum claims. Moreover, "[w]here upon a trial of an indictment the defendant offers himself as a witness, and testifies in his own behalf, he thereby subjects himself to the same rules, and may be called on to submit to the same tests as to his credibility as may legally be applied to other witnesses." *Hanoff* v. *State* (1881), 37 Ohio St. 178, paragraph one of the syllabus.

The prosecutor in his argument did appeal to the jury's emotion rather than reason. By asking the jurors how they felt, and whether they were worried or shocked by seeing Landrum with the knife, the prosecutor overstepped the bounds of propriety.

However, viewed in its total context, the prosecutor's final argument was reasoned, logical, and not emotional. He kept to matters of record; he carefully reviewed the extensive evidence against Landrum; and he pointed out possible prejudice or bias of defense witnesses. As a whole, the argument was unobjectionable.

The court instructed the jury on the effect of the not guilty plea and further that counsel's arguments were not evidence. In his own trial testimony, Landrum admitted planning the burglary and wrestling and threatening White with the butcher knife. Shortly after the murder, Landrum apparently told at least five people that he personally had cut White's throat. Landrum claimed he did not remember making those admissions, but he never denied making them. Those facts demonstrate a strong case, not a weak circumstantial case as Landrum claims. In light of the overall fairness of the prosecutor's closing argument, the misconduct was not crucial. Landrum received a fair trial and there was no miscarriage of justice. We decline to recognize any plain error. Crim. R. 52(B); *State* v. *Wade, supra*.

Landrum's other complaints about the prosecutor's conduct in the guilt phase are without merit. Some latitude is granted to both parties in closing argument. *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 82, 512 N.E. 2d 611, 616; *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 589, 23 O.O. 3d 489, 493, 433 N.E. 2d 561, 566. Viewed in its entirety, the closing argument was not prejudicial. *State* v. *Byrd, supra*, at 82, 512 N.E. 2d at 616; *State* v. *Moritz*

(1980), 63 Ohio St. 2d 150, 157, 17 O.O. 3d 92, 97, 407 N.E. 2d 1268, 1273.

In his second proposition of law, Landrum claims denial of a fair trial by citing four examples of prosecutorial misconduct during the sentencing hearing. First, Landrum complains about a comment made by the prosecutor when he cross-examined Landrum about earlier admissions that he slit White's throat. Defense counsel objected that these admissions were not aggravating factors. The prosecutor responded: "I submit that they are and I'm sure that the White family will submit that they are." The court announced: "Gentlemen, no more comments. Approach the Bench."

The prosecutor's comment was improper. See *Booth* v. *Maryland* (1987), 482 U.S. 496; *South Carolina* v. *Gathers* (1989), 490 U.S. ___, 104 L. Ed. 2d 876, 109 S. Ct. 2207. The state concedes as much, though Landrum, by asking the family's forgiveness, first injected the White family's name. The trial court promptly admonished the prosecutor. Counsel did not request a curative instruction, and none was given. Not every intemperate remark by counsel can be a basis for reversal. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 267, 15 OBR 379, 403, 473 N.E. 2d 768, 793. The touchstone of analysis "* * * is the fairness of the trial, not the culpability of the prosecutor. * * *" *Smith* v. *Phillips* (1982), 455 U.S. 209, 219. The Constitution does not guarantee an "error free, perfect trial * * *." *United States* v. *Hasting* (1983), 461 U.S. 499, 508. We find the error to have been nonprejudicial.

Second, Landrum complains that the prosecutor misstated the law in arguing that Landrum's age of twenty-three should not be a mitigating factor because of Landrum's relative maturity. However, the prosecutor did not misstate applicable law. "The youth of the offender" as used in R.C. 2929.04 (B)(4) may refer to chronological age. See *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 183, 17 OBR 414, 422, 478 N.E. 2d 984, 993. Nonetheless, the prosecutor could argue Landrum's relative maturity reflected by his high school education, United States Navy service, and fathering two children. In doing so, the prosecutor simply responded to defense counsel's assertion that age was important and relevant. We have specifically recognized the importance of relative maturity. *State* v. *Brewer* (1990), 48 Ohio St. 3d 50, 57, 549 N.E. 2d 491, 498; *State* v. *Cooey* (1989), 46 Ohio St. 3d 20, 544 N.E. 2d 895, paragraph four of the syllabus; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 128, 31 OBR 273, 288, 509 N.E. 2d 383, 398.

Third, Landrum complains that the prosecutor injected nonstatutory aggravating circumstances. Landrum also raises this issue in his sixteenth proposition of law. Landrum contends that the prosecutor's cross-examination and final argument concerning planning the burglary and cutting White's throat improperly injected into the trial prior calculation and design and the heinous nature of the crime as nonstatutory aggravating circumstances.

The manner of killing is not a statutory aggravating circumstance. Prior calculation and design is not a statutory aggravating circumstance if a defendant is charged as a principal. R.C. 2929.04(A)(7); *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 371, 513 N.E. 2d 744, 746. Improperly introducing nonstatutory aggravating circumstances is error. *State* v. *Davis* (1988), 38 Ohio St. 3d 361, 372, 528 N.E. 2d 925, 935-936. However, we find the prosecutor injected no new aggravating circumstances.

The jury found as specified aggravating circumstances that Landrum committed murder as the principal offender, in the course of burglary and to escape detection. The prosecution may present evidence relating to aggravating circumstances or challenge defense mitigation evidence. R.C. 2929.03(D)(1); *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 282-286, 528 N.E. 2d 542, 552-555. Landrum's statement to Brown before the burglary that he would kill White if White discovered them helps to establish that he murdered to escape detection, for he did what he said he would. Though he killed to escape detection, Landrum readily admitted the killing and burglary to several juveniles after the murder. His bizarre and starkly contrasting behavior illuminates the facts behind the specified aggravating circumstances. The prosecutor's questions also related to the nature and circumstances of the offense, a potential statutory mitigating factor. *State* v. *Beuke* (1988), 38 Ohio St. 3d 29, 32, 526 N.E. 2d 274, 279.

Landrum's behavior after the murder also tends to discredit his in-trial expressions of remorse and sorrow. The prosecutor could legitimately challenge Landrum's claims of religious reconciliation and desire to counsel other juveniles in the future. The trial court properly instructed the jury on what the aggravating circumstances were. Since defense counsel did not object, Landrum also waived any error as to the closing argument. *State* v. *Wade, supra,* paragraph one of the syllabus.

Fourth, Landrum argues that the prosecutor's cumulative misconduct impaired the overall fairness of the death penalty determination. We disagree. The jury decided on death only after full and fair argument. The prosecutor did not, in closing, primarily appeal to emotions as in *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 14, 514 N.E. 2d 407, 420. Prosecutorial misconduct did not permeate the trial or affect its fundamental fairness. See *State* v. *Maurer, supra,* at 266, 15 OBR at 402, 473 N.E. 2d at 793. Thus, Landrum's claims of error in his second proposition of law lack merit.

## II
## Exclusion of Evidence

In his third proposition of law, Landrum argues that the trial judge erred when he excluded Randy Coffenberger's proffered testimony during the sentence hearing. Coffenberger would have testified that Grant Swackhammer told him on September 20 that he, Grant, had slit White's throat. Landrum argues that the alleged statement by Grant was admissible as a declaration against penal interest under Evid. R. 804(B)(3). He further asserts that Grant's statement was admissible, regardless of the hearsay rule, because of the relaxed rules of evidence in sentencing proceedings. According to counsel at trial, a juvenile court adjudged Grant a delinquent for his role in the White burglary and murder. We agree that the trial judge should have admitted Coffenberger's testimony.

In this case, Coffenberger's testimony met several requirements for admissibility. Grant earlier refused to testify as a state witness based on his own privilege against self-incrimination. Thus, the declarant was unavailable as a witness. Grant's statement also qualifies as a declaration against penal interest by admitting his own guilt as a principal to murder. Admissibility hinges on this further requirement. "* * * A statement tending to expose the declarant to criminal liability * * * is not admissible unless

corroborating circumstances clearly indicate the trustworthiness of the statement." Evid. R. 804(B)(3). Based on that requirement, the trial judge excluded the statement.

Landrum argues that his own testimony that he had not cut White's throat, together with the lack of blood found on his clothing, constitutes sufficient corroborating circumstances. The state disputes this and argues that Grant told the police that Landrum cut White's throat.

The state also argues that Coffenberger's lack of credibility as a potential witness supports the trial court's decision excluding Coffenberger's testimony. The state proffered evidence that Coffenberger had five felony convictions and told the police he had not seen Grant after the murder.

The determination of whether corroborating circumstances are sufficient to admit statements against penal interest, as a hearsay exception, generally rests within the discretion of the trial court. *United States* v. *Guillette* (C.A.2, 1976), 547 F. 2d 743, 754; *United States* v. *MacDonald* (C.A.4, 1982), 688 F. 2d 224, 233 (proponent of a statement against interest faces a "formidable burden"). "* * * [T]he inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable. * * *" *United States* v. *Salvador* (C.A.2, 1987), 820 F. 2d 558, 561. This is not an "insignificant hurdle." *United States* v. *Barrett* (C.A.1, 1976), 539 F. 2d 244, 253; *State* v. *Saunders* (1984), 23 Ohio App. 3d 69, 23 OBR 132, 491 N.E. 2d 313; Annotation, Admissibility, as Against Interest, in Criminal Case of Declaration of Commission of Criminal Act (1979), 92 A.L.R. 3d 1164.

However, in *Chambers* v. *Mississippi* (1973), 410 U.S. 284, the Supreme Court reversed a murder conviction because the court excluded out-of-court admissions from another, admitting the murder of which the accused was convicted. The *Chambers* court relied upon several factors supporting the reliability of the statements: (a) the statements were made spontaneously shortly after the murder to a close acquaintance; (b) other evidence corroborated the statements; (c) the statements were "in a very real sense self-incriminatory and unquestionably against interest * * *"; and (d) the declarant was available for cross-examination. *Id.* at 300-301.

In *Green* v. *Georgia* (1979), 442 U.S. 95, the Supreme Court, on due process grounds, reversed a death sentence because the trial court excluded an accomplice's confession that he rather than the defendant had pulled the trigger. *Green* cited *Chambers*, affirming that " 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.' " *Green, supra,* at 97.

In this case, three of the four *Chambers* criteria were satisfied. Grant allegedly made his statement, spontaneously, the day after the murder. He had no motive to lie then. His statement was unquestionably against his penal interest. Corroboration existed in Landrum's sworn testimony and the lack of any blood on Landrum's clothing. However, Grant, the declarant, was not available for cross-examination.

The credibility of Coffenberger as a witness does not affect the statement's admissibility. Evid. R. 804 (B)(3) refers to "the trustworthiness of the statement," not the witness. As the fact finder, the jury was responsible for assessing Coffenberger's credibility as a witness. As in *Chambers,* the fact that the declarant had

made conflicting statements does not preclude admissibility. As in *Green* v. *Georgia*, technical rules of hearsay cannot defeat fundamental due process rights.

We also conclude that the trial judge erred for other reasons. In *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906, we faced complaints about hearsay statements being admitted in death penalty sentencing proceedings. In response, we recognized that the Rules of Evidence do not strictly apply to sentencing proceedings. See Evid. R. 101(C)(3); *State* v. *Williams, supra,* at 23, 23 OBR at 19, 490 N.E. 2d at 913. R.C. 2929.04 (C) mandates: "The defendant shall be given great latitude in the presentation of evidence of * * * [mitigating factors]." Simply because Grant made conflicting statements did not warrant the trial court's rejection of the statement. See *Chambers* v. *Mississippi, supra.*

We have considered Coffenberger's proffered testimony in our independent assessment and weighing of evidence mandated by R.C. 2929.05 (A). See *Clemons* v. *Mississippi* (1990), 494 U.S. ___, 108 L. Ed. 2d 725, 110 S. Ct. 1441; *State* v. *Lott* (1990), 51 Ohio St. 3d 160, 170, 555 N.E. 2d 293, 304. In view of that reweighing, we find it unnecessary to analyze this error in terms of its possible effect on the jury. See Part XVI of this opinion.

Landrum also urges that the trial court improperly excluded evidence that Grant routinely carried a knife and had a violent nature. However, the fact that Grant regularly carried a knife was before the jury. As to Grant's allegedly violent character, see Evid. R. 404(A). Landrum made no proffer and preserved no error. Evid. R. 103(A)(2); *State* v. *Gilmore* (1986), 28 Ohio St. 3d 190, 28 OBR 278, 503 N.E. 2d 147, syllabus.

## III
## Continuance

Landrum argues in his fourth proposition of law that the trial court erred by denying repeated requests for continuance. Following a September 27, 1985 arraignment, the trial court in mid-October set a December 16 trial date. Landrum's counsel filed over forty-five pretrial motions. The trial court held frequent hearings to dispose of these. On November 19, Landrum's counsel requested a "reasonable" delay. Reluctantly, the court approved a delay until February 10, 1986.

In mid-January and later, counsel asked for other continuances, arguing that state public defender investigators assigned to the case, especially mitigation specialists, had been too busy on other cases to assist the two locally appointed counsel. Appointed counsel did not assert that they personally lacked time to interview witnesses or develop mitigation strategy. Nor did counsel ask for authority to hire investigators. The court kept the February 10 start date, but eventually delayed the sentencing hearing until March 17, 1986.

The grant or denial of a continuance is entrusted to the broad, sound discretion of the trial judge. *State* v. *Powell* (1990), 49 Ohio St. 3d 255, 259, 552 N.E. 2d 191, 196; *State* v. *Unger* (1981), 67 Ohio St. 2d 65, 21 O.O. 3d 41, 423 N.E. 2d 1078, syllabus; *State* v. *Price* (1973), 34 Ohio St. 2d 43, 63 O.O. 2d 82, 295 N.E. 2d 669. Several factors can be considered: the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors. *State* v. *Unger, supra,* at 67-68, 21 O.O. 3d at 43, 423 N.E. 2d at 1080; *Ungar* v. *Sarafite* (1964), 376 U.S. 575, 589-591.

In this case, the need for the delay

did not suddenly arise from newly discovered evidence as in *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 94, 24 OBR 282, 288, 494 N.E. 2d 1061, 1067. Rather, the request for delay arose from appointed counsel's tactical desire to devote their efforts to extensive pretrial motions and to allow the state public defender's investigators to interview witnesses. Denial of a continuance requested pursuant to counsel's tactical design is permissible. *State* v. *Unger, supra.* Although counsel claimed they were not prepared to proceed, they had over four full months to prepare for trial and over five months to prepare for sentencing. They investigated numerous approaches, and abandoned some, such as the presentation of psychiatric testimony. During the sentencing hearing, the defense called numerous witnesses, including four witnesses from Michigan. The record demonstrates from the inception a zealous, earnest, intelligent and dedicated defense effort. *State* v. *Price, supra.* Under these circumstances, the trial judge did not abuse his discretion by denying a continuance.

## IV

### Venue

In his fifth proposition of law, Landrum argues that the trial court erroneously denied his motion for a defense expert to assist in presenting a change of venue motion. In deciding on requests for experts, trial judges must make an informed decision on whether the services are reasonably necessary for the proper representation of a defendant. R.C. 2929.024. See, also, *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 194, 15 OBR 311, 336, 473 N.E. 2d 264, 292. Here, the court denied Landrum's motion because it totally lacked specifics regarding the identity, qualifications and cost of the expert.

Landrum never presented facts on which an informed judgment could be based. Thus, the trial judge never abused his discretion.

In his sixth proposition of law, Landrum alleges that the trial court erred when it did not order a change of venue. Although he initially denied the motion, the trial judge explicitly allowed for renewal of the motion after an attempt was made to seat a jury. After three days of voir dire during which twenty-eight potential jurors were passed for cause, Landrum asked again for a venue change.

The local Chillicothe newspaper extensively reported the crime and local radio also covered it. The news media extensively covered the previous trial of Grant Swackhammer. Most of that coverage was factual, not sensational, and predated Landrum's trial. However, the news media did report in some detail one crucial item of possibly prejudicial information. Grant Swackhammer confessed to the police, and the state used that confession at Grant's trial. In that confession, Grant asserted that Landrum cut White's throat. Grant did not testify at Landrum's trial and none of his versions of the events was in evidence. See Part II of this opinion.

As Landrum argues, virtually all of the prospective jurors had read or heard media reports about the case. Several potential jurors had known the deceased or his son, Pat White, or had been in his grocery store. Ohio law explicitly recognizes that a trial judge may change venue "when it appears that a fair and impartial trial cannot be held" in that court. Crim. R. 18(B); R.C. 2901.12(K). Any decision on changing venue rests largely in the discretion of the trial court. Absent a clear showing of an abuse of discretion, the trial court's decision controls. *State* v. *Maurer, supra,* at 251, 15 OBR at

389, 473 N.E. 2d at 781; *State* v. *Fairbanks* (1972), 32 Ohio St. 2d 34, 61 O.O. 2d 241, 289 N.E. 2d 352; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 164, 34 O.O. 2d 270, 277, 214 N.E. 2d 417, 427. "* * * [A] careful and searching *voir dire* provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality. * * *" *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 98, 2 O.O. 3d 249, 262, 357 N.E. 2d 1035, 1051.

Pretrial publicity can undermine a trial's fairness. "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days * * * an important case can be expected to arouse the interest of the public in the vicinity * * *." *Irvin* v. *Dowd* (1961), 366 U.S. 717, 722. A small amount of publicity, published during trial and containing prejudicial information not in evidence, may violate an accused's due process rights. *Goins* v. *McKeen* (C.A.6, 1979), 605 F. 2d 947. In contrast, even extensive pretrial publicity may have dissipated its effects before trial. See *Murphy* v. *Florida* (1975), 421 U.S. 794.

In this case, the trial judge decided that despite the pretrial publicity few jurors recalled any details and "none indicated they would have trouble putting it out of their mind or having that interfere with their fair and impartial deliberation." Our review of the extensive voir dire conducted by the court and both counsel supports that finding. The delay from September to February helped dissipate any effects from the publicity.

Moreover, the trial judge took other effective steps to protect Landrum's rights. At the request of the defendant, he sent out an extensive questionnaire to all prospective jurors. The court cautioned counsel about discussions with the news media. The judge strongly and repeatedly advised jurors not to listen to local news broadcasts or read local newspapers. Landrum cites no instances of prejudicial publicity near or during trial. See *Goins* v. *McKeen, supra.* Under all the circumstances, Landrum fails to demonstrate any abuse of discretion.

## V
### Jury Issues

In his seventh proposition of law, Landrum argues that he was entitled to funding for a defense psychologist, as a consultant, to assist in selecting a jury. The trial court can properly exercise discretion and deny funds for this purpose. See R.C. 2929.024; *State* v. *Jenkins, supra,* at 193, 15 OBR at 335, 473 N.E. 2d at 291; *State* v. *Thompson, supra,* at 6, 514 N.E. 2d at 413.

In his eighth proposition of law, Landrum argues that the trial court erred by conducting group voir dire. Initially, the judge and counsel individually voir dired three prospective jurors. Based on that experience, the judge then decided to collectively voir dire twelve jurors at a time. However, he continued to question individual jurors about their death penalty views out of the hearing of other jurors. The record reflects a full, thorough voir dire with few objections or restrictions. Counsel made few challenges for cause and there was little controversy.

Neither Ohio nor federal law requires individual voir dire. That issue is within the discretion of the trial judge. See *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140, paragraph three of the syllabus; *State* v. *Brown* (1988), 38 Ohio St. 3d 305, 528 N.E. 2d 523, paragraph two of the syllabus. Landrum fails to argue or demonstrate how the court abused its discretion. Thus, his proposition of law lacks merit.

In his ninth proposition of law,

Landrum argues that the trial judge improperly excused prospective juror Don Clark because of his general opposition to the death penalty. Landrum further claims that the trial judge did not sufficiently question Clark.

We find no merit in Landrum's argument. During a lengthy voir dire, Clark gave conflicting answers about his death penalty views. Finally, he told the trial judge he could not follow the instructions of the court and fairly consider the death penalty. Viewing the voir dire in its entirety, *Darden* v. *Wainwright* (1986), 477 U.S. 168, we conclude that the trial judge properly decided that Clark's views would substantially impair his performance as a juror. *State* v. *Rogers, supra*, at paragraph three of the syllabus, following *Wainwright* v. *Witt* (1985), 469 U.S. 412; *State* v. *Steffen, supra*, at 120-121, 31 OBR at 281, 509 N.E. 2d at 392-393.

In his tenth proposition of law, Landrum argues that the judge should have excused for cause three prospective jurors who indicated they would not consider mitigating factors. Prospective juror Marsha Morrison indicated that age (twenty-three) would not make a difference to her in the death penalty decision, but that the existence of a drug or alcohol problem or a difficult family environment might. Prospective juror James Bowers also discounted age, and personally felt that the lack of a significant criminal record or a drug and alcohol problem was not important. He would have considered family background. Edler would have personally given no weight to age or the lack of a criminal record, but would consider family background.

When questioned, these prospective jurors did not know what the law required. All three agreed they could put aside personal views and follow the trial court's instructions on appropriate mitigating factors.

Clearly, jurors cannot be challenged because they do not individually believe in every one of seven statutory mitigating factors. Jurors need not unanimously accept a mitigating factor in order to consider it or give it weight. See *McKoy* v. *North Carolina* (1990), 494 U.S. ___, 108 L. Ed. 2d 369, 110 S. Ct. 1227. Belief is not the requirement. The test is whether beliefs would have prevented or substantially impaired their performance as jurors. See *State* v. *Rogers, supra*, and *Wainwright* v. *Witt, supra*. On this record, Landrum does not demonstrate impairment of these jurors' ability to follow instructions. Thus, no error existed.

Landrum complains in his eleventh proposition of law that the trial court prejudiced him by ordering that he be handcuffed during the jury's view of the crime scene. After hearing counsel's arguments, the trial court decreed Landrum be unobtrusively handcuffed; leg irons were not used.

We have recognized that no one should be tried while shackled, absent unusual circumstances. *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 285, 513 N.E. 2d 311, 318. The question is for the sound discretion of the trial court. *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 22-23, 35 O.O. 2d 8, 12-13, 215 N.E. 2d 568, 576.

Here, the jury viewed an apartment building above a grocery store and a wooded area. Landrum was not handcuffed during the trial. Under the circumstances, the record does not demonstrate that the trial judge abused his discretion. Compare *Woodards* v. *Cardwell* (C.A.6, 1970), 430 F. 2d 978 (abuse of discretion), with *Kennedy* v. *Cardwell* (C.A.6, 1973), 487 F. 2d 101 (no abuse). Annotation, Propriety and Prejudicial Effect of Gagging, Shackling, or Otherwise Physically Restraining Accused During

Course of State Criminal Trial (1979), 90 A.L.R. 3d 17.

In his twenty-second proposition of law, Landrum asserts error because the trial judge declined to order a second voir dire at the start of sentencing. His arguments lack merit or authority. See *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 530 N.E. 2d 382, paragraph three of the syllabus.

In his twenty-third proposition of law, Landrum argues that the process of death qualification of a jury denies him an impartial jury and compromises his constitutional rights. However, both the United States Supreme Court and this court have previously rejected similar arguments and upheld current procedures. *Lockhart* v. *McCree* (1986), 476 U.S. 162; *State* v. *Jenkins, supra,* at paragraph two of the syllabus.

## VI

### Defective Indictment

In his twenty-fourth proposition of law, Landrum argues the aggravated murder indictment was insufficient because it did not set forth the elements of the underlying crimes of burglary and larceny. Before trial, the prosecutor filed a bill of particulars which clarified some of the indictment's alleged ambiguities.

Crim. R. 7(B) specifically authorizes an indictment to be "in the words of the applicable section of the statute," though it need not be. See *State* v. *Oliver* (1972), 32 Ohio St. 2d 109, 61 O.O. 2d 371, 290 N.E. 2d 828, syllabus; *State* v. *Toney* (1909), 81 Ohio St. 130, 90 N.E. 142, paragraph two of the syllabus. Courts cannot grant new trials based upon imperfection or inaccuracy in an indictment if the charge is sufficient to fairly and reasonably inform the defendant of the essential elements of the crime. Crim. R. 33(E)(1).

In this case, the indictment followed the statutory language and the bill of particulars provided further clarification. Landrum raised here no issue of fatal defect or variance such as those involved in the cases he cites: *State* v. *Cimpritz* (1953), 158 Ohio St. 490, 49 O.O. 418, 110 N.E. 2d 416; *State* v. *Headley* (1983), 6 Ohio St. 3d 475, 6 OBR 526, 453 N.E. 2d 716; *Watson* v. *Jago* (C.A.6, 1977), 558 F. 2d 330. Hence, his arguments lack merit.

## VII

### Defendant as Co-Counsel

In his twenty-sixth proposition of law, Landrum argues that the trial court abused its discretion when it did not permit him to act as co-counsel at his trial. We disagree. Two able, experienced defense counsel represented Landrum. An accused has no right to act as co-counsel in his own behalf. *State* v. *Thompson, supra,* at 6-7, 514 N.E. 2d at 414.

## VIII

### Prior Statements of Witnesses

In his twenty-eighth proposition of law, Landrum argues that the trial court should have ordered the pretrial release of previous statements of prosecution witnesses. He argues that his counsel had inadequate time to review the statements before cross-examination.

Under Crim. R. 16(B)(1)(g) and (B)(2), defendants are not entitled to pretrial discovery of witnesses' statements. Crim. R. 16 requires that an accused be given a copy of the statement only if the trial judge determines there are inconsistencies between the testimony and the prior statement. Discovery beyond what the rules require is at the trial court's discretion. See *State, ex rel. Lighttiser,* v. *Spahr* (1985), 18 Ohio St. 3d 234, 18 OBR 292, 480 N.E. 2d 779.

In this case, the trial court allowed

Landrum's counsel to personally review the statements even though it found no inconsistencies. Counsel agreed that no inconsistencies existed. Counsel did not ask for any recess other than those provided, nor did counsel complain of inadequate time to prepare his cross-examination. Under the circumstances, the trial judge did not err.

## IX

### Witness Immunity and Self-incrimination Privilege

In his twelfth proposition of law, Landrum argues that the trial court erred in refusing to grant immunity to Grant Swackhammer. At trial, the prosecution called Grant as a witness, but Grant refused to testify, asserting his Fifth Amendment privilege in response to both prosecution and defense questions. Landrum argues that his fundamental right to present witnesses implies a right to compel the state, in appropriate cases, to immunize a witness that claims Fifth Amendment privileges.

Courts have, at times, required some privileges to give way to a criminal defendant's due process rights. *United States* v. *Nixon* (1974), 418 U.S. 683 (executive privilege); *Roviaro* v. *United States* (1957), 353 U.S. 53 (informant's privilege). The principal authority supporting Landrum's arguments is *Virgin Islands* v. *Smith* (C.A.3, 1980), 615 F. 2d 964. That case recognized that a federal district court could grant judicial use immunity to a defense witness when no strong governmental interest precluded such a grant of immunity.

However, Landrum's claim of error must fail. Ohio trial courts do not have authority to grant nonstatutory use immunity to a defense witness at an accused's request. *State, ex rel. Leis,* v. *Outcalt* (1982), 1 Ohio St. 3d

147, 1 OBR 181, 438 N.E. 2d 443. Other federal and state authority supports Ohio's view that courts do not have inherent authority to immunize defense witnesses. The *Virgin Islands* case is a minority view. See *United States* v. *Capozzi* (C.A.8, 1989), 883 F. 2d 608, 613; *United States* v. *Hunter* (C.A.10, 1982), 672 F. 2d 815, 818; *United States* v. *Thevis* (C.A.5, 1982), 665 F. 2d 616, 639; Annotation, Right of Defendant in Criminal Proceeding to Have Immunity from Prosecution Granted to Defense Witness (1981), 4 A.L.R. 4th 617.

Moreover, Landrum does not establish that Grant's testimony would in fact have helped him. Logically, Grant might have adhered to his proffered pretrial statement to the police asserting Landrum cut White's throat. Nor did Landrum request the prosecutor to seek statutory immunity under R.C. 2945.44. Nor has Landrum suggested prosecutorial misconduct in immunizing some witnesses but not others for a nefarious purpose. We find no merit in Landrum's arguments.

In his thirteenth proposition of law, Landrum argues that the trial court did not adequately question Grant before excusing him from testifying.

The trial judge must determine if a proposed witness's testimony would be self-incriminating. The witness's claim alone is not adequate. See *Hoffman* v. *United States* (1951), 341 U.S. 479, 486; *McGorray* v. *Sutter* (1909), 80 Ohio St. 400, 89 N.E. 10, paragraph two of the syllabus. A valid assertion exists where a witness has reasonable cause to apprehend a real danger of incrimination. *United States* v. *Apfelbaum* (1980), 445 U.S. 115, 127; *In re Morganroth* (C.A.6, 1983), 718 F. 2d 161, 167. "To sustain the privilege, it need only be evident from the implications of the question, in the set-

ting in which it is asked, that a responsive answer * * * might be dangerous because injurious disclosure could result. * * *'' *Hoffman, supra,* at 486-487. The privilege extends to answers which would furnish a link in the chain of evidence, exposing the witness to criminal liability. *Id.* at 486; *Blau* v. *United States* (1950), 340 U.S. 159.

According to information given to the court, Grant was an admitted accomplice to burglary and murder. He had been adjudged a delinquent. That adjudication was on appeal. The trial court could conclude that it did not clearly appear that the witness was mistaken in claiming the Fifth Amendment privilege. *Hoffman, supra,* at 486; *McGorray* v. *Sutter, supra.* In declining to compel answers under such circumstances, the court acted within its discretion. The court gave Landrum full opportunity to question the witness. Under the circumstances, we find no error.

## X
### Prior Consistent Statement

In his fourteenth proposition of law, Landrum complains about the trial judge's refusal to permit him to use a prior statement by a witness during cross-examination. Under Crim. R. 16(B)(1)(g), defense counsel could not use that statement during cross-examination unless there were inconsistencies. See *State* v. *O'Hara* (1980), 1 Ohio App. 3d 50, 51-52, 1 OBR 20, 22, 439 N.E. 2d 431, 433. At trial, counsel conceded there were no "major inconsistencies" in the prior statement. Thus there was no error.

## XI
### Gruesome Photo

In his fifteenth proposition of law, Landrum complains about a single gruesome photograph, allegedly inflammatory. This close-up photo at the crime scene depicted the victim's cut throat. Under Evid. R. 403 and 611(A), admission of photographs is left to the sound discretion of the trial court. *State* v. *Maurer, supra,* at 264, 15 OBR at 401, 473 N.E. 2d at 791. Even gruesome photographs are admissible in capital cases if they meet certain tests and the danger of material prejudice is outweighed by their probative value. See *State* v. *Maurer, supra,* paragraph seven of the syllabus; *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 513 N.E. 2d 267.

This photograph was relevant on the issue of what caused White's death. The danger of prejudice was minimal. Hence, admission of the photo was not prejudicial.

## XII
### Who Argues Last

Landrum's seventeenth proposition of law argues that permitting the prosecutor to argue last to the jury in capital sentence hearings violates Ohio statutes and his constitutional rights. We have rejected this argument before. See *State* v. *Jenkins, supra,* at paragraph eleven of the syllabus; *State* v. *Rogers, supra,* at paragraph six of the syllabus.

## XIII
### Instructions to the Jury on Sentencing

In his eighteenth proposition of law, Landrum argues that the trial judge erred when he instructed the jury: "* * * [A] jury recommendation to the Court that the death penalty be imposed, is just that — a recommendation and is not binding upon this Court. The final decision as to whether the death penalty shall be imposed upon the defendant, rests upon this Court. * * *'' He also urges that the prosecutor erred in arguing this same point.

However, the court's instructions

and prosecutor's arguments did not impart to the jury any sense of lessened responsibility. The instruction was not prejudicial error. "The jury * * * may be instructed that its recommendation to the court that the death penalty be imposed is not binding and that the final decision as to whether the death penalty shall be imposed rests with the court." *State* v. *Jenkins, supra*, paragraph six of the syllabus; *State* v. *Thompson, supra*, at 6, 514 N.E. 2d at 413. Admittedly, this court has often expressed a preference that this instruction not be given. *State* v. *Williams, supra*, at 22, 23 OBR at 19, 490 N.E. 2d at 912.

However, in this case, Landrum's defense counsel several times in final argument improperly equated a jury recommendation for death to the jury "killing" Landrum. See *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 434, 28 OBR 480, 486, 504 N.E. 2d 52, 58. Under the circumstances, the instruction might have even been helpful, and no error exists.

In his nineteenth proposition of law, Landrum argues a variety of alleged instructional deficiencies. First, he argues that the court's instructions precluded the jury from considering sentence appropriateness. However, the instructions followed the Ohio statute, which reflects sentence appropriateness. R.C. 2929.04(D)(2). Moreover, the United States Supreme Court has held that an instruction requiring death if aggravating circumstances outweigh mitigating factors does not prevent a jury from making an individualized determination of the appropriateness of the death penalty as required by the Eighth Amendment. *Boyde* v. *California* (1990), 494 U.S. ___, 108 L. Ed. 2d 316, 110 S. Ct. 1190.

Second, Landrum argues that the jurors were not told what to do if they did not reach agreement. However, such an instruction is not required in advance, and the jury did not reflect any disagreement.

Third, contrary to Landrum's claims, the jury need not be told that aggravation must outweigh mitigation "clearly and substantially." Here, Landrum essentially reargues that "outweigh" is an amorphous standard incapable of use. We have rejected this argument. See *State* v. *Jenkins, supra*, at 172-173, 15 OBR at 318-319, 473 N.E. 2d at 276-277; *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 139, 22 OBR 203, 216, 489 N.E. 2d 795, 809.

In both propositions of law nineteen and twenty-seven, Landrum argues that the court should have instructed the jury that the state's burden was proof beyond all doubt both in the guilt and in the sentencing stages. We reject this argument for the reasons stated in *State* v. *Jenkins, supra*, at 210-211, 15 OBR at 351-352, 473 N.E. 2d at 304-305.

In his twentieth proposition of law, Landrum complains that the court declined to instruct separately on eleven separate mitigating factors as framed by defense counsel. However, the court did instruct the jury, following statutory language, that mitigating factors included, but were not limited to, the history, character and background of the offender, Landrum's youth, lack of significant prior criminal convictions and delinquency adjudications, the degree of his participation in the offense, and "any other factors that are relevant * * *."

While the trial judge might have tailored the instructions more to the evidence, such an approach is not required. The trial judge did not misstate the law. Nor did he exclude consideration of possible mitigating factors as in *Lockett* v. *Ohio* (1978), 438 U.S. 586. Hence, there was no error.

In his twenty-ninth proposition of law, Landrum argues that the jury was not adequately instructed on the role of mercy in capital sentencing. Landrum contends that the prosecutor misled the jury and that this necessitated a full explanation of mercy. A defense witness, a Catholic priest, testified in the sentencing hearing that Landrum had reconciled with the church. In argument, the prosecutor told the jury they should decide on the basis of fact and law, not on emotion or sympathy. In rebuttal closing, the prosecutor said: "I submit to you that forgiveness is God's business, not a jury's. A jury's business is justice under the law. * * *" The judge instructed the jury to "make your finding with intelligence and impartiality and without bias, sympathy or prejudice * * *."

Considered as a whole, the instructions adequately informed the jury of its responsibility to consider all the defense's mitigating evidence. See *California* v. *Brown* (1987), 479 U.S. 538, 546 (O'Connor, J., concurring). An instruction to exclude bias, sympathy or prejudice is intended to ensure that sentencing is based on reviewable guidelines, not a juror's personal bias or sympathy. *State* v. *Jenkins, supra,* paragraph three of the syllabus; *State* v. *Steffen, supra,* at 125, 31 OBR at 285, 509 N.E. 2d at 396. Requiring that capital sentencing be based on sympathy that jurors feel for an accused, after considering defense evidence, would be a new constitutional rule under the Eighth Amendment. *Saffle* v. *Parks* (1990), 494 U.S. ___, 108 L. Ed. 2d 415, 110 S. Ct. 1257.

## XIV

### Constitutionality

Landrum's twenty-first proposition of law, challenging the constitu-

tionality of Ohio's proportionality review, has been rejected previously. See *State* v. *Steffen, supra.* The proportionality of Landrum's death sentence is considered later.

In his twenty-fifth proposition of law, Landrum lodges a multifaceted attack against the constitutionality of Ohio's death penalty statutes. We have upheld their constitutionality against the same challenges advanced by Landrum. *State* v. *Jenkins, supra;* see, also, *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568. The United States Supreme Court has also upheld the constitutionality of other state statutes against similar arguments. See, *e.g., Boyde* v. *California, supra; Blystone* v. *Pennsylvania* (1990), 494 U.S. ___, 108 L. Ed. 2d 255, 110 S. Ct. 1078.

## XV

### Appellate Errors

In his thirtieth proposition of law, Landrum argues that the court of appeals erred in affirming the death penalty. Contrary to Landrum's claim, the court of appeals did consider him a principal offender to the murder. The court stated: "After White had been knocked senseless to the floor, they went to the kitchen, got a knife, and killed him as he lay there. * * *" Nor did the court of appeals improperly inject nonstatutory aggravating circumstances. That court simply recognized that "the brutal, senseless, useless death of a helpless old man * * *" did not allow the nature and circumstances of the offense to be mitigating. A trial court or three-judge panel "may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, at para-

graph one of the syllabus; *State* v. *Steffen, supra*, at 117, 31 OBR at 278, 509 N.E. 2d at 390.

In his thirty-first proposition of law, Landrum claims we denied him the effective assistance of appellate counsel by denying two requests for time extensions to file his initial brief. Landrum obtained extensive delays in the court of appeals and he filed his brief there four hundred thirteen days after the original due date. The current brief is one hundred sixty-two pages with a one hundred eighty-one page appendix. The issues have not, nor could they have, expanded since the court of appeals considered the case. Hence, we find no error.

## XVI

### Sentence Review

We have independently reviewed and weighed the evidence as required by R.C. 2929.05(A). In doing so, we have rectified any errors we have identified that might have affected the weighing of the aggravating circumstance against mitigating factors, or the fundamental fairness and appropriateness of the death penalty determination. See *Clemons* v. *Mississippi, supra; State* v. *Lott, supra,* at 170, 555 N.E. 2d at 304.

The United States Supreme Court, in upholding the constitutionality of appellate reweighing in jury cases, noted:

"'The primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime. * * * In scrutinizing death penalty procedures under the Eighth Amendment, the Court has emphasized the 'twin objectives' of 'measured consistent application and fairness to the accused.' * * *'" (Citations omitted.) *Clemons, supra*, at ___, 108 L. Ed. 2d at 738, 110 S. Ct. at 1448.

We find the evidence fully supports the merged aggravating circumstance that, as a principal offender, Landrum committed murder in the course of burglarizing White's home (R.C. 2929.04[A][7]) and to escape detection (R.C. 2929.04[A][3]). Landrum and Swackhammer carried a railroad bolt to attack White if he should enter during the burglary. Landrum planned the burglary, "cased" White's apartment on a pretext, told Carolyn Brown he would kill White if White came back, and waited in Brown's apartment for White to leave. When White did come back while the burglary was in progress, Landrum signaled Grant to hit White with the bolt, wrestled with White, and told Grant to get a knife. Then Landrum cut White's throat. Despite Landrum's contrary claim, we find that Landrum was the principal offender in the aggravated murder of White.

After independently assessing the evidence, we find several mitigating features in Landrum's history, character and background. Although in early childhood, a warm, close family smothered him with care and attention, at age five, he moved abruptly and his father then subjected him to inconsistent discipline for the rest of his childhood. Around the age of sixteen, he became truant and dependent on drugs and alcohol. Juvenile authorities institutionalized him as an unruly child. He spent two years in the Navy. Prior to the murder, Landrum was unemployed. He has two children.

During the sentencing hearing, numerous witnesses described Landrum as a warm, carefree, gentle person, never violent, who got along well with everyone; a childlike man who never grew up. They doubted he could have committed this murder. He did have a serious alcohol and drug problem. Thus, Landrum seemed unable to cope with life as an adult. Yet, clearly,

many family members loved and would help and support him.

While testifying, Landrum expressed great remorse for his crime. With a priest's help, he had gone through the Sacrament of Reconciliation. He asked the jury and court to spare his life and he begged forgiveness. He asked the White family as well as his own family to forgive him for the pain and sorrow that he brought on them. After prison and further education, he wants to dedicate his life to helping youngsters avoid problems with drugs and alcohol.

We find no evidence supporting the relevance of factors listed in R.C. 2929.04(B)(1) (victim induced offense) or R.C. 2929.04(B)(2) ("duress, coercion, or strong provocation"). We do not find the mitigating factor specified in R.C. 2929.04(B)(3), despite the contrary holding of the court of appeals. That factor requires that the lack of substantial capacity to appreciate criminality or to conform to law result from a mental disease or defect operative when Landrum committed the offenses. *State* v. *Cooey, supra,* at 40, 544 N.E. 2d at 918; *State* v. *Van Hook* (1988), 39 Ohio St. 3d 256, 263, 530 N.E. 2d 883, 889-890. Landrum brought forth no testimony or evidence of a mental disease or defect, such as testimony of a psychologist or psychiatrist. Much of the testimony about his being high on drugs and alcohol related to his condition after the murder. By then, he had begun taking large numbers of the pills stolen earlier from the murder victim's home. In sum, the evidence at trial of his voluntary intoxication simply did not sustain a finding under R.C. 2929.04(B)(3).

We find Landrum's age of twenty-three only minimally qualifies as a mitigating factor under R.C. 2929.04 (B)(4), "youth of the offender." We further find, as a statutory mitigating factor, that Landrum lacked "a signifi-cant history of prior criminal convictions and delinquency adjudications[.]" R.C. 2929.04(B)(5). Aside from bad check and disorderly conduct convictions, he had no prior criminal convictions. The exact extent of his juvenile record was not before the court.

A key issue remaining is the degree of Landrum's participation if he were not the principal offender. R.C. 2929.04(B)(6). We have considered the defense proffer of Coffenberger's testimony as if it were in evidence in sentencing. (See discussion, Part II, *supra.*) According to the proffer, on September 20, "Grant said that he was watching him [White] and that the old man kept moving around and kept making noises and then Grant had decided to go to the kitchen and got a knife and that he cut his throat."

Though it was considered, we view Coffenberger's proffered testimony as of no value. Grant's oral statement conflicts with Landrum's own trial testimony where Landrum admitted wrestling with White and threatening him with the knife; it also conflicts with Landrum's admission to five juveniles the night of the murder that Landrum personally cut White's throat. Coffenberger's credibility is impeached by documents proffered by the state, according to which he had five prior felony convictions, and had denied to the police, in detail, ever seeing Landrum or Grant after the murder. Since we find that Landrum was a principal offender in the murder, the potential mitigation factor in R.C. 2929.04(B)(6) is not present.

As to "other factors," R.C. 2929.04(B)(7), we find Landrum's stated remorse, drug and alcohol problems, and desire for rehabilitation to be mitigating. In contrast, we find the nature and circumstances of the offense offer nothing in mitigation. Two youths with weapons attacked and killed an elderly man, in his own home.

After independently weighing the aggravating circumstance against the mitigating factors in this case, *Clemons* v. *Mississippi, supra,* we conclude that the proved aggravating circumstance outweighs any mitigating factors beyond a reasonable doubt. R.C. 2929.05(A). While mitigating, Landrum's history, character and background and "other factors" (R.C. 2929.04[B][7]) are not entitled to significant weight. His prior lack of significant criminal convictions is important, though his age of twenty-three is not.

We find the sentence of death is the appropriate sentence and proportionate compared with other felony murder cases. See *State* v. *Van Hook, supra* (aggravated robbery); *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 528 N.E. 2d 1237 (aggravated burglary and attempted rape); *State* v. *Greer, supra* (aggravated robbery); *State* v. *Holloway* (1988), 38 Ohio St. 3d 239, 527 N.E. 2d 831 (aggravated burglary and aggravated robbery); *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394 (rape and aggravated burglary); *State* v. *Steffen, supra* (rape and aggravated burglary); *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922 (aggravated burglary and aggravated robbery); *State* v. *Williams, supra* (aggravated robbery).

Accordingly, appellant's conviction and sentence are affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES, DOUGLAS and RESNICK, JJ., concur.

WRIGHT and H. BROWN, JJ., concur in part and dissent in part.

H. BROWN, J., concurring in part and dissenting in part. I agree with the majority that appellant's conviction should be affirmed. However, I must respectfully dissent from the judgment so far as it upholds the sentence of death.

As the majority correctly holds in Part II of its opinion, it was error for the trial court to exclude the proffered testimony of Randy Coffenberger that Grant Swackhammer claimed that he, and not appellant, killed White.

R.C. 2929.04(C) prescribes that capital defendants "shall be given great latitude" in presenting mitigating evidence. The purpose of this prescription is to carry out the constitutional requirement that the defendant be able to present *all* relevant mitigating evidence for the sentencer's consideration. *Lockett* v. *Ohio* (1978), 438 U.S. 586; *Eddings* v. *Oklahoma* (1982), 455 U.S. 104; *Skipper* v. *South Carolina* (1986), 476 U.S. 1. Clearly, the trial court violated this principle when it ruled that Coffenberger's testimony was inadmissible. It is also clear that this error prejudiced appellant. Throughout the case, appellant claimed that he did not personally kill White and, therefore, was not the principal offender. This claim was bolstered by the absence of blood stains on appellant's clothing, excepting his shoes, which bore traces of blood, insufficient for analysis. Had the jury accepted appellant's theory, he probably would not have been sentenced to death. Given the fact that Coffenberger's testimony was critical to appellant's mitigation effort, we must engage in dangerous speculation to conclude that the jury would have reached the same verdict had this evidence been admitted and considered.

The United States Supreme Court has repeatedly held that the exclusion of relevant mitigating evidence in the penalty phase of a capital trial requires that the sentence of death be vacated. *E.g., Skipper, supra* (exclusion of testimony on defendant's successful

adjustment to prison life invalidates sentence of death); *Lockett, supra* (statutory exclusion of mitigating evidence constitutionally invalid). Unfortunately, after recognizing this error, the majority claims that it is cured by our independent reweighing of the aggravating and mitigating circumstances.

In support of its contention that appellate reweighing is a universal remedy, the majority cites *Clemons* v. *Mississippi* (1990), 494 U.S. ___, 108 L. Ed. 2d 725, 110 S. Ct. 1441, and *State* v. *Lott* (1990), 51 Ohio St. 3d 160, 555 N.E. 2d 293. Neither case supports this sweeping pronouncement.

In *Clemons, supra*, the United States Supreme Court held that the Mississippi courts did not violate the federal Constitution when they affirmed a death sentence through independent reweighing after one of two applicable statutory *aggravating* circumstances had been declared unconstitutional. *Clemons* does not speak to the erroneous exclusion of mitigating evidence.

In *Lott, supra*, we did hold that our independent reweighing rectified "whatever errors the trial court may have committed," *id.* at 170, 555 N.E. 2d at 304, but that case is distinguishable. Lott waived his right to a jury and was tried by a three-judge panel; the errors he alleged dealt with the manner in which the trial judges weighed the aggravating and mitigating evidence, not with the admission or exclusion of evidence. Further, we did not base our decision wholly upon the existence of independent reweighing. We went on to discuss Lott's propositions of law in detail, and held that the alleged errors were either nonexistent or harmless beyond a reasonable doubt. Thus, there were no prejudicial errors for our independent reweighing to rectify.

Where the only error is that the courts below failed to give the correct weight to various aggravating and mitigating circumstances, this court's independent review is a sufficient safeguard. See, *e.g., State* v. *Brewer* (1990), 48 Ohio St. 3d 50, 56-57, 549 N.E. 2d 491, 498. However, where the error is that the jury was not permitted to hear and consider significant mitigating evidence, our review, no matter how carefully and correctly done, is not sufficient. It is always possible that the sentencing jury, the trial judge, or the court of appeals might have taken a different view had this evidence been admitted; both the Constitution and the death penalty statutes require that appellant be given these opportunities.[1] Our reweighing is not a substitute for the right to a recommendation from the sentencing jury.

Accordingly, I would vacate the sentence of death and remand the case for resentencing in accord with *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 513 N.E. 2d 744.

WRIGHT, J., concurs in the foregoing opinion.

I can concur in the majority's conclusion that this misconduct was not prejudicial or plain error requiring reversal of appellant's conviction. However, these improper arguments reinforce my view that a reweighing of the evidence at this level is no substitute for the right to be sentenced by a jury.

---

[1] Appellant was also subjected to prosecutorial misconduct, as the majority notes in Part I of its opinion. Clearly, the prosecutor should not have commented on appellant's not guilty plea, nor should he have attempted to scare the jury by placing the murder weapon in appellant's hand during cross-examination, and then playing on the jurors' emotions by asking them if the sight "shock[ed]" or "worried" them.