OPINION
Plaintiff-appellant Sue E. Boroff, executrix of the estate of Leo Boroff, takes this appeal from a judgment of the Court of Common Pleas of Van Wert County denying a motion for separate voir dire of certain jury panel members.
On January 6, 1995, Leo Boroff died from complications following lung surgery at Van Wert County Hospital. On May 20, 1996, Sue Boroff ("Boroff"), as executrix of Leo's estate, filed a complaint against Dr. Scott Jarvis ("Jarvis"), Medicine Critical Care Associates ("MCCA"), Dr. R.D. Bradrick ("Bradrick"), the Emergency Management Services of Van Wert, Inc. ("EMS"), Dr. Eric Jelinger ("Jelinger"), West Ohio X-Ray ("X-Ray"), Dr. Robert C. Adams ("Adams"), Dr. T.L Johnson ("Johnson"), and Van Wert County Hospital ("the Hospital"). The complaint alleged that the defendants had negligently cared for Leo, which resulted in his wrongful death. On June 10, 1996, the defendants filed their answers. On April 13, 1998, Boroff dismissed the complaint against Johnson, Adams, Bradrick, and EMS. Boroff received a copy of the jury questionnaires on October 13, 1998. Boroff noted that 10 out of the 25-person panel had a relationship with the remaining defendants or the defendants' expert medical witnesses. Boroff then filed a motion for separate voir dire of these panel members. On October 19, 1998, the trial began and the Hospital was discharged as a defendant. The trial court also overruled the motion for separate voir dire of the panel members with connections to the defense. On October 23, 1998, the jury returned a verdict for the defendants.
Boroff raises the following assignment of error.
 The trial court erred to Boroff's prejudice in failing to grant Boroff's motion for "separate voir dire" of those members of the Petit Jury whose personal physicians had been defendants in this action and had also been identified as defense witnesses.
"The scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case." State v. Bedford (1988), 39 Ohio St.3d 122, 129,529 N.E.2d 913, 920.
 Neither Ohio nor federal law requires individual voir dire. That issue is within the discretion of the trial judge.
State v. Landrum (1990), 53 Ohio St.3d 107, 117, 559 N.E.2d 710,723. Restrictions placed upon voir dire are generally upheld.State v. Lundgren (1995), 73 Ohio St.3d 474, 653 N.E.2d 304.
Here, the trial court refused to permit Boroff from conducting a separate voir dire of ten panel members. The trial court denied Boroff the opportunity to speak separately with each individual juror. However, the trial court did not deny Boroff the opportunity to question the potential jurors concerning their relationships with the various defendants and the effect of that relationship upon impartiality.
 Mr. Rosenfield: * * * First of all, we have the two defendants in this case, that's Dr. Eric Jelinger, he's an x-ray doctor over at Van Wert County hospital. Does anyone know Dr. Jelinger or have anything to do with him? He works for a firm, a group of doctors called Ohio something x-ray. I really don't know the name of the firm but he's the guy we're talking about. Is anybody familiar with them in any way? Yes, ma'am?
Mrs. Egley: He has read some of my tests.
 Ms. Rhodes: West Ohio X-Ray reads our x-rays. Whether he reads them or not, I couldn't tell you, I don't know.
 Mr. Fisher: He's read x-rays for my wife. I don't know him personally.
* * *
 Mr. Rosenfield: Is there anything in your prior experience that says once a guy does one thing right he's got to do — the rest of his life he's got to do it right? See, I just didn't do it right. He's got to do it right the rest of his life. Anybody believe that? You don't always make a mistake; isn't that correct? Another one of the defendants or the other defendant that will be remaining in the case is Dr. Jarvis, Dr. Scott Jarvis. Dr. Jarvis has a partner, Dr. Metry. Is anyone familiar with Dr. Jarvis or Dr. Metry? Okay. Yes, ma'am?
Ms. Hoblet: My sister works for him.
Mr. Rosenfield: Do you know him?
Ms. Hoblet: No
* * *
 Mr. Rosenfield: * * * If it came down to your having to listen to the evidence in this case and saying, you know, I think Dr. Jarvis was wrong, would you be able to do that without any reservation whatsoever, that, geez, if I do that maybe my sister will be mad at me or maybe insecure about it? Would you have a problem with that?
Ms. Hoblet: No.
* * *
 Mr. Rosenfield: You mentioned that you had some familiarity with Dr. Jarvis or Dr. Metry.
Ms. Morgan: A lot of my family members.
Mr. Rosenfield: Your family members are there?
Ms. Morgan: Yeah.
 Mr. Rosenfield: Would you have a problem if you sat on this jury and had to vote against Dr. Jarvis? Do you think that that would — do you have any hesitation that that was the right thing to do?
Ms. Morgan: No.
Mr. Rosenfield: I believe . . .
 Ms. Eickholt: Dr. Jarvis and Dr. Metry, my husband was in the hospital middle of September.
Mr. Rosenfield: Is he still being seen by Dr. Metry?
Ms. Eickholt: No.
* * *
 Mr. Rosenfield: * * * Would you have a problem separating what you're going to hear in this case about this particular instance from your experience with Dr. Jarvis and Dr. Metry when your husband was in the hospital?
 Ms. Eickholt: I don't think I would have a problem with that.
* * *
 Mr. Rosenfield: The nature of your husband's problem that he was in the hospital, is that the kind of thing that's likely to take him back into that practice again?
Ms. Eickholt: There is a possibility.
 Mr. Rosenfield: And knowing that there is a possibility that your husband may have to go back into that practice and knowing that there is a possibility that if you sit on this jury you may well have to find that Dr. Jarvis was negligent, sitting there, weighing the facts in your mind, is that going to give you some pause that might make you worry about are you being fair, are you being a good juror?
Ms. Eickholt: It might.
* * *
Mr. Rosenfield: * * * Ms. Rhodes, I believe?
Ms. Rhodes: My parents' doctor was Dr. Metry.
 Mr. Rosenfield: Your parents' doctor. Well I'm going to ask the same question. You know, Dr. Metry isn't here, have you ever seen Dr. Jarvis?
Ms. Rhodes: I don't know that.
 Mr. Rosenfield: You don't know that. Would you still feel that that's not going to give you some problem if it came right down to it, geez, I may have to sit in this panel and say that my mom and dad's doctor was negligent? They're going to have to go back to see him again. Will you be able to sit here and not have any question about in your mind are you going to be drawn one way or the other because of that concern?
Ms. Rhodes: No.
Mr. Rosenfield: Was there someone else?
Ms. Brown: I have family members that see Dr. Metry.
 Mr. Rosenfield: Again, would you be able to — knowing that your family members may have to go see Dr. Jarvis some day, um, I was on that jury; would you have a problem with that?
Ms. Brown: Yeah.
 Mr. Rosenfield: You do have a problem with that? You don't think you'd be able to be fair; is that correct?
Ms. Brown: Right.
* * *
 Mr. Rosenfield: * * * Let me ask this question of those jurors who raised their hands regarding either Dr. Johnson or Dr. Adams or both. * * * Does the fact that you may well have to reject the testimony or opinions of your own doctors going to give you a problem? Are you going to be able to sit here and say, well, you know, I just don't think Dr. Johnson was right or I just don't think Dr. Adams was right? Is everybody going to be able to do that? Yes, ma'am?
 Ms. Wermer: Well, besides being my own physicians, they come into the office that I work in and they're friends of my boss.
 Mr. Rosenfield: Are you going to have trouble listening to them and saying, yeah, they say what they're going to say, I'm going to weigh their testimony and not be favored towards them more or less than anyone else? Will you be able to do that?
Ms. Wermer: It will be hard.
 Mr. Rosenfield: May I assume that you are thinking in you heart you wouldn't be able to do that?
Ms. Wermer: Well, I'll try to be but I don't know.
Mr. Rosenfield: It would be real hard?
Ms. Wermer: Uh-huh.
* * *
 Mr. Rosenfield: * * * Would you be able to start right there or does your relationship with Adams and Johnson start that scale a little bit tipped in their favor?
Ms. Wermer: It might tip it.
Transcript, 9-18.
Of the ten potential jurors listing a relationship with any of the doctors, only three sat on the jury. The others were dismissed by challenge for cause, dismissed by peremptory challenge, or were not needed. Boroff did not question the three remaining jurors about their potential biases and did not challenge them for cause. Since Boroff knew of the potential bias before voir dire, did not challenge the array, and had an opportunity to question the potential jurors, any error in not questioning them was created by Boroff. The trial court did not abuse its discretion by denying the motion to separately voir dire the panel members and no prejudice has been shown to result from the decision. The assignment of error is overruled.
The judgment of the Court of Common Pleas of Van Wert is affirmed.
Judgment affirmed.
SHAW and HADLEY, JJ., concur.