JOURNAL ENTRY AND OPINION
Defendant-appellant Maurice Rhoades appeals from his conviction for menacing by stalking (R.C. 2903.211) following a bench trial in the Cleveland Municipal Court. Defendant contends he was deprived of his right to a fair trial by the admission of hearsay evidence in the nature of "other bad acts" to which his counsel failed to object, thereby raising the issue of ineffective assistance of counsel. We find no reversible error and affirm.
The case arises from a number of episodes in which defendant kept pressing his attentions on one Paula Dinkins resulting in her complaint to the police.
Ms. Dinkins testified that she was first introduced to the defendant in June of 1997 at a mutual friend's house. She merely said "Hi" and "took off." Ms. Dinkins later saw defendant in public, but did not interact with him. She began hearing from her friends, however, that the defendant had been looking for her.
The next face-to-face encounter occurred later in June when the defendant showed up at Ms. Dinkins' parents' home unannounced and uninvited. Ms. Dinkins answered the door without looking to see who was knocking. The defendant told her that he was there to see her and that he liked her. Defendant called Ms. Dinkins Taneshia, not Paula, and referred to her as such throughout their encounters. Ms. Dinkins then began to question defendant as to how he knew where she lived and who had given him information concerning her. This conversation lasted approximately five minutes and concluded by Ms. Dinkins making it clear to the defendant that she did not wish him to return and had no interest in him. Just before defendant left, he said "why can't I like you? Why can't you like me?" Following that encounter, Ms. Dinkins believed that he understood her disinterest and that he did not pose any risk to her.
The next encounter also took place in late June at the Fairfax Swimming Pool where Ms. Dinkins was swimming. The defendant approached her and attempted to coax her from the water, asking her to "come here." She refused, while retreating away from him. The defendant tried to stretch into the swimming pool to reach her, edging into the water until half of his pants were wet and he sat in the pool fully clothed. Ms. Dinkins then called out loud for help. A lifeguard responded and told the defendant that he was barred from the swimming area and that he had to leave or she would call security. The lifeguard then told her that "she has had this problem with [defendant] with other women."
This swimming pool incident upset Ms. Dinkins because the defendant told her that he came into the pool after recognizing her car outside. Although she was upset over this incident, Ms. Dinkins still did not believe that the defendant posed any threat to her safety. However, she knew "something was up" and "alarm bells" went off in her head making her believe that something was wrong. She thought that defendant was "becoming a pest."
In the early part of July 1997, at approximately 11:30 p.m., Ms. Dinkins exited her home to put the t-tops on her car for the night. When she got to her car, the defendant was standing there and stated, "I knew you had to come back outside to put your t-top(s) on, Taneshia." Ms. Dinkins ran scared back into her house. Her father then went out onto the porch to try and see if anyone was still outside, but he did not see anyone.
Subsequently, the defendant returned to Ms. Dinkins' home and knocked on the door. Ms. Dinkins looked out of the window before attempting to open the door. At this time, Ms. Dinkins was scared because of what had happened by her car. Through the closed door she told defendant to leave. He asked her why she was treating him like that. She told him, "because I don't like you. You scare me. I don't want you to come over here. [D]o you understand that?" (Tr. at 14). The defendant answered "yes-yes." Ms. Dinkins then asked him why he was doing this and he replied, "Because I like you. I just want you to care." Ms. Dinkins called the police, but the defendant left before they arrived.
On July 30, 1997, the day after Ms. Dinkins' birthday, the defendant returned to her house sliding a birthday card under the door. Ms. Dinkins could not understand how the defendant knew it was her birthday, and this upset her. She confronted him again and told him that he was scaring her. She called the police, but again he was gone by the time they arrived. Defendant subsequently returned to her house on August 13, 1997, where she again told him to leave and that she was going to call the police. She called her mother out of the kitchen to show her that he had returned and then called the police.
The police arrived a short time later and the defendant was still present when they arrived. The police placed the defendant in the zone car and conferred with Ms. Dinkins. Ms. Dinkins was visibly upset and scared.
The police interviewed the defendant after placing him under arrest and reading him his Miranda Rights. The defendant told the officers that "Taneshia" was his girlfriend.
On August 15, 1997, Ms. Dinkins filed a complaint against defendant charging him with menacing by stalking in violation of R.C. 2903.211. A motion for a temporary protection order was then filed on her behalf pursuant to R.C. 2919.26, and the following day, on August 15, 1997, defendant was ordered to have no contact with the victim.
On February 19, 1998, the day after the final pre-trial, Ms. Dinkins again encountered defendant at the Morris Black housing project where she was visiting friends. She was there to get her hair braided. She parked her bright yellow Camaro in the back because the lot was full. When some closer parking spaces became available, Ms. Dinkins went outside to move her car. She discovered that another vehicle was parked behind hers, blocking her in. She went back inside to call the CMHA police in order to have the car moved, but her friend suggested she could help since she knew everyone at Morris Black. While her friend was gone, the defendant began banging on the door of the apartment and screaming. Her friend returned and told her that the vehicle that was blocking her in belonged to the defendant. Police were called and the car was towed.
Defendant testified in his own behalf. The thrust of his testimony was that his interest in Ms. Dinkins was reciprocated and she invited him over to her house and was always friendly towards him.
Following defendant's conviction, the case was referred for a pre-sentence report and the defendant was referred to the Psychiatric Clinic for post-sentencing evaluation. On April 2, 1998, the defendant was sentenced to 180 days, which were suspended. Defendant was placed on three years active probation and ordered to undergo mental health counseling. On May 1, 1998, the defendant filed a timely notice of appeal.
We will address defendant's two assignments of error together because they are closely related.
 I. MAURICE RHODES WAS DENIED HIS RIGHT TO A FAIR TRIAL BY THE INTRODUCTION OF IMPROPER HEARSAY EVIDENCE THAT CONCERNED ALLEGATIONS THAT HE HAD COMMITTED SIMILAR ACTS IN THE PAST.
 II. MAURICE RHOADES WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE INTRODUCTION OF IMPROPER HEARSAY EVIDENCE THAT ALLEGED HE HAD COMMITTED SIMILAR BAD ACTS ON PREVIOUS OCCASIONS.
In his first assignment of error, defendant asserts that the testimony of the victim stating that the lifeguard told her that she had similar problems with defendant with other women was hearsay and should not have been allowed. In the second assignment of error, he contends his counsel was ineffective for not objecting to the hearsay. We do not find this fleeting reference to be reversible error because defendant did not object and the case was tried to the bench. Furthermore, the reference was in a general narrative response to which the City made no further reference.
The Ohio Supreme Court has repeatedly held that errors which are not brought to the attention of the trial court by objection or otherwise are waived and may not be raised on appeal, unless such errors rise to the level of plain error. State v. Campbell (1994),69 Ohio St.3d 38, 40-41; State v. Williford (1990), 49 Ohio St.3d 247,251; State v. Underwood (1983), 3 Ohio St.3d 12, syllabus;State v, Long (1978), 53 Ohio St.2d 91, paragraph one of the syllabus. The Supreme Court has frequently limited the plain error rule. In State v. Landrum (1990), 53 Ohio St.3d 107, the Court stated:
 Notice of plain error under Crim.R. 52 (B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.
Id. at 111, quoting Long, supra, at paragraph three of the syllabus.
Crim.R. 52 (B) states that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, an alleged error "does not constitute a plain error or defect under Crim.R. 52 (B) unless, but for the error, the outcome of the trial clearly would have been otherwise." Long, supra, at paragraph two of the syllabus. "Under a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial would clearly have been different." State v. Parker
(Oct. 5, 1995), Cuyahoga App. No 68156, unreported, citing State v.Kent (1980), 68 Ohio App.2d 151.
In the instant case, defendant failed to object to Ms. Dinkins' testimony regarding what the lifeguard told her. The reference, e was buried in a run-on narrative answer by Ms. Dinkins which was not even responsive to the question asked. Therefore, based on the above authorities, defendant is deemed to have waived the issue of this alleged hearsay testimony unless defendant can establish that "but for the error, the outcome of the trial clearly would have been otherwise." Here, even if the introduction of this testimony was error, it did not rise to the level of plain error necessary for this Court to reverse the conviction. There was considerably less danger of prejudice to the defendant in this case because the fact-finder was a judge rather than a jury and the judge would have, known to disregard the hearsay testimony. Accordingly, we cannot say that "but for" this alleged error, defendant would not have been found guilty. There was sufficient other evidence to find defendant guilty of the charged crime beyond a reasonable doubt regardless of the hearsay testimony.
In his second assignment of error, defendant asserts that because his trial counsel did not object to alleged hearsay evidence, his constitutional rights were so prejudiced as to constitute plain error under Crim.R. 52. This issue is closely related to that discussed above. In any event, we find no basis for application of the doctrine on the facts of this case.
This Court described the standard of review to make a showing of ineffective assistance of counsel in Lakewood v. Town (1995),106 Ohio App.3d 521, 525-26:
 The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2 at 698.
Furthermore, when determining whether counsel's performance was deficient "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland v.Washington (1984), 466 U.S. 668, 689. A defendant's failure to satisfy either of the two Strickland tests is sufficient to dismiss the claim of ineffective assistance of counsel.
As noted above, defendant has failed to demonstrate to a reasonable probability that the result of the trial would have been different if the testimony had not been admitted into evidence. As discussed above in response to Assignment of Error I, the trial court's introduction of Ms. Dinkins' hearsay testimony did not rise to the level of plain error to warrant reversal of defendant's conviction. Therefore, the failure to object to it does not fall below the objective standard of reasonableness for counsel so as to be deemed ineffective assistance of counsel. Furthermore, since the reference to the lifeguard's fleeting remark about "other women" was buried in a narrative response, we do not fault defense counsel for simply ignoring it and trusting the trial court to disregard it. In other words, it was a strategic decision not to object or move to strike.
Even absent this testimony regarding the statement by the lifeguard, there was sufficient other evidence to support defendant's conviction. Under R.C. 2903.211 (A), "menacing by stalking" is defined as:
 No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
Furthermore, under R.C. 2903.211 (A) (1), "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."
Ms. Dinkins testified to the numerous encounters involving defendant's unwanted attention and behavior. She testified that on five separate occasions, defendant visited her house uninvited. She further testified that after several of these incidents, she began to fear for her safety and that she expressed this fear to the defendant more than once. Yet, defendant ignored her fear and continued to bother her. We find that there was sufficient other evidence that defendant knowingly caused Ms. Dinkins to fear for her safety through his pattern of uninvited visits and other advances.
We find no evidence of material prejudice to defendant from the "hearsay" statement. Nor was defendant constitutionally deprived of effective assistance of counsel by a failure to object. In either event, there was no plain error justifying reversal.
Defendant's Assignments of Error I and II are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATTON, J., and BLACKMON, J., CONCUR.
 ___________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE