JOURNAL ENTRY AND OPINION
Defendant-appellant Ennis Johnson appeals from his conviction following a jury trial for aggravated robbery (R.C. 2911.01) with firearm specifications. Defendant claims he was unfairly prejudiced at trial by admission of testimony about a photo array and hearsay evidence. He also contends the verdict was against the manifest weight of the evidence. We find no error and affirm.
On January 6, 1998, defendant entered Irwin Engraving and Printing, a print shop owned by Mr. and Mrs. Milan Nass at East 53rd and St. Clair Avenue in Cleveland. He asked for an employment application. David Nass, the owners' son, spoke to defendant and asked him what skills he had. After defendant responded that he was a welder, David told him that he had no need for a welder in the printing business. Defendant then left. Approximately 7 to 10 minutes later, Mrs. Nass observed defendant return to the foyer of the shop, look in and walk back out. After a few more minutes, defendant returned to the shop with a gun and held Mrs. Nass and David at gun point demanding that they empty their pockets and give him all the money. When the Nasses explained that they did not operate a cash business and did not have any money on hand, defendant demanded that they give him their wedding rings. Mrs. Nass explained that she could not get her rings off since she gained weight. According to her testimony, defendant put the gun to her head and ordered her to get them off, which she did. David Nass also gave his wedding ring to defendant. Defendant fled with the rings and the victims called 911. Within five minutes Cleveland Police Officers Dunlay and Glaser arrived and took statements from the victims.
The officers got a description of the suspect and the weapon used in the commission of the robbery. They learned that the suspect had been in the shop three times earlier that day asking about employment. The officers also learned that the suspect left with the victims' wedding rings. Mrs. Nass' rings were engraved with "MM 8-17-57," her wedding date. On a hunch, the officers decided to check area pawn shops.
The officers went to Uncle Ben's Pawn Shop at East 49th Street and Payne Avenue where they spoke to Ben Tansky, the pawn shop owner, and described the rings. Mr. Tansky immediately produced the rings in question which he had just received for appraisal from Atef Zarub, who was still standing at the counter. The officers confronted Zarub. Zarub told the officers that he received the rings from Faisal Abuhandeh, the operator of the Zoeter Avenue Meat Market on East 66th Street. After the officers requested assistance from other police units in the area, they entered the market and arrested Zarub and Abuhandeh for receiving stolen property.
However, at this time, they did not arrest the male who robbed Mrs. Nass and her son at the print shop.
The officers questioned nearby residents about a male fitting the description given by the victims. A bystander at the 66th Street market pointed to a house across the street. Several officers visited the house to further investigate the whereabouts of an individual who fit the suspect's description and used the street name of "Bean." Officer DeJesus questioned Ms. Johnson who turned out to be defendant's mother. As a result of his conversation with Ms. Johnson, Officer DeJesus obtained the real name of the suspect and his date of birth. He also observed several items of clothing on the premises which matched the description given by the victims. Before leaving, Officer DeJesus took the clothing and instructed Ms. Johnson to have her son, Ennis Johnson, turn himself in.
In the meantime, Officers Dunlay and Glaser left the East 66th market and went back to see the victims at the print shop. The officers showed Mrs. Nass the rings recovered at Uncle Ben's Pawn Shop and she positively identified them as the rings which had earlier been taken by the armed robber.
The same day, the case was referred to the Third District of the Cleveland Police Department for follow up. Det. McCoy had an arrest warrant issued for Ennis Johnson. Within a week of the robbery, Mrs. Nass, David Nass and Sandra Batko, a print shop office worker, gave statements to Det. McCoy and viewed a photo array at the district headquarters. They identified the photo of Ennis Johnson as the hold-up man.
Although defendant was convicted of robbing Mrs. Nass with gun specifications, the jury was unable to agree on the charge involving David Nass. The trial court declared a mistrial as to that charge, and on the State's motion, the court dismissed that count. This timely appeal ensued. We will address defendant's assignments of error in the order presented.
 I. THE TRIAL COURT ERRED BY PERMITTING THE ADMISSION OF, AND TESTIMONY ABOUT THE PHOTO ARRAY WHEN THE STATE (1) FAILED TO PROVE THE CHAIN OF CUSTODY OF THE PHOTOS THROUGH A WITNESS WITH PERSONAL KNOWLEDGE, AND (2) FAILED TO PROVE THAT THE VIEWING OF THE PHOTO ARRAY WAS CONDUCTED ACCORDING TO LAW.
Defendant asserts that the State failed to authenticate and failed to prove the chain of custody of the photo array used at trial. He further asserts that the identification procedure used by the police in this case was improperly suggestive. Therefore, the trial court erred in admitting the photo array and in allowing testimony about it at trial. We disagree.
At trial, David Nass, Mrs. Nass and Sandra Batko testified that they picked defendant out of the photo array as the person who asked for an employment application and later robbed them at gun point. However, there was no objection at this time to the direct testimony of these witnesses in identifying the photos in open court or any challenge to the chain of custody or the suggestive nature of the photo array. Furthermore, at the conclusion of the State's case, the State moved for the admission of the photo array exhibits along with other exhibits. A discussion followed about the admissibility of these exhibits. During this discussion, defense counsel stated:
 I don't believe I have any objection to the six photographs of inmates, for lack of a better term, and the Polaroid shots of the pawn shop and the house across the street.
 I don't have any objection to the photographs I was shown yesterday of the Irwin Engraving and Printing Shop.
(Tr. at 389-90)
The Ohio Supreme Court has repeatedly held that errors which are not brought to the attention of the trial court by objection or otherwise are waived and may not be raised on appeal, unless such errors rise to the level of plain error. State v. Campbell (1994),69 Ohio St.3d 38, 40-41; State v. Williford (1990), 49 Ohio St.3d 247,251; State v. Underwood (1983), 3 Ohio St.3d 12, syllabus;State v. Long (1978), 53 Ohio St.2d 91, paragraph one of the syllabus. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs (1968),14 Ohio St.2d 56, paragraph three of the syllabus.
However, Crim.R. 52 (B) states that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court has frequently limited the plain error rule. In State v. Landrum
(1990), 53 Ohio St.3d 107, the Court stated:
 "Notice of plain error under Crim.R. 52 (B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."
Id. at 111, quoting Long, supra, at paragraph three of the syllabus. Furthermore, an alleged error "does not constitute a plain error or defect under Crim.R. 52 (2) unless, but for the error, the outcome of the trial clearly would have been otherwise."Long, supra, at paragraph two of the syllabus; State v. Parker(Oct. 5, 1995), Cuyahoga App. No 68156, unreported, citing State v.Kent (1980), 68 Ohio App.2d 151.
Defendant failed to object to the photo array or any of the testimony regarding it at any time before or during the trial. Therefore, based on the above authorities, defendant is deemed to have waived this issue unless defendant can establish that "but for the error, the outcome of the trial clearly would have been otherwise." Here, even if the introduction of this evidence was error, it did not rise to the level of plain error necessary for this Court to reverse his conviction. There was significant other evidence for the jury to find defendant guilty beyond a reasonable doubt of the aggravated robbery of Mrs. Nass even if the photo array or testimony about it would have been excluded from the trial. Accordingly, we cannot say that "but for" this alleged error, defendant would not have been found guilty. There was no miscarriage of justice, no exceptional circumstances, and there was no plain error as to the photo array evidence.
Defendant's Assignment of Error I is overruled.
 II. THE TRIAL COURT ERRED WHEN IT PERMITTED A POLICE OFFICER TO GIVE HEARSAY TESTIMONY OF A CONVERSATION WITH THE APPELLANT'S MOTHER, WHICH WAS USED TO LINK APPELLANT TO THE INCIDENT.
In his second assignment of error, defendant asserts that the State failed to establish by admissible evidence that defendant was the son of Ms. Johnson who lived across the street from the E. 66th market. Specifically, he asserts that Officer DeJesus' testimony that Ms. Johnson told him that "Bean" was her son constituted inadmissible hearsay, and absent such testimony, there was no link between the defendant and the clothing found at Ms. Johnson's home. Therefore, this evidence was improperly allowed and the trial court should have declared a mistrial or should have granted his Crim.R. 29 (A) motion for acquittal. We disagree.
Under Evid.R. 801 (C), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is not admissible under Evid.R. 802.
First, defendant's assertion that there was no admissible link between him and the house across the street from the market is unsupported by the record. The evidence clearly establishes that as the officers questioned the market's patrons about a male fitting the description given by the victims, one of the patrons pointed out the house across the street. The officers then proceeded to the house to further investigate the whereabouts of the individual that fit the description and went by the street name "Bean."
Testimony of a police officer who gleans information and then testifies as to what he did next in the course of his investigation is admissible and does not constitute hearsay since it is not offered to prove the truth of the matter asserted, but to explain the course of his investigation. State v. Blevins (1987),36 Ohio App.3d 147, 149, citing State v. Thomas
(1980), 61 Ohio St.2d 223, 232. Therefore, contrary to defendant's assertion, there was an admissible link between him and his mother's home which resulted in the discovery of the clothing used in the robbery.
Also, the record clearly reflects that immediately after Officer DeJesus testified about what Ms. Johnson said to him, defense counsel objected to the testimony. This objection was sustained by the trial court. Also, at the conclusion of all the evidence, the trial court fully instructed the jury as to what its obligation was in precluding hearsay testimony from consideration during its deliberations. Appellate courts are generally required to presume that jurors follow the instructions given to them by the trial judge. State v. Loza (1994), 71 Ohio St.3d 61, 75; Pang v.Minch (1990), 53 Ohio St.3d 186, 195. The record reveals that the jury was instructed to disregard the hearsay testimony and there is nothing in the record to suggest that the jury failed to meet its obligation. Accordingly, we must presume that the jury properly disregarded Officer DeJesus' testimony regarding what Ms. Johnson told him.
Defendant further objects to Officer DeJesus' testimony that he told Ms. Johnson to have her son turn himself in. However, no objection was raised at trial as to this statement, nor was it brought to the trial court's attention or otherwise preserved for appeal. Therefore, as discussed above, defendant is precluded from raising it now, especially when there was ample evidence aliunde directly identifying the robber.
Defendant's Assignment of Error II is overruled.
 III. THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows inState v. Thompkins (1997), 78 Ohio St.3d 380, 386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29 (A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982). 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983) 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")
From what has been said before, there was ample evidence from which the jury could properly conclude that the defendant was the robber who held up Mrs. Nass and her son at gun point; that he took their wedding rings by force of arms; that he fenced them to the Arab store owner; and that they ultimately ended up in Uncle Ben's Pawn Shop. In addition, David Nass, Mrs. Nass and Sandra Batko all picked defendant out of a photo array as the person who asked for an employment application and later robbed them. These three witnesses also identified defendant in court as the robber. We cannot say that the jury clearly lost its way or that defendant's aggravated robbery conviction created a manifest miscarriage of justice. Therefore, the judgment is not against the manifest weight of the evidence.
Defendant's Assignment of Error III is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., and JAMES D. SWEENEY, J., CONCUR.
 ___________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE