OPINION
Appellant William R. Scheffler appeals a judgment of the Licking County Common Pleas Court convicting of four counts of obstruction of justice (R.C. 2921.32(A)(4)), four counts of bribery (R.C.2921.02 (C)), and two counts of intimidation of a witness, (R.C.2921.04 (B)):
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN SENTENCING MR. SCHEFFLER BY FAILING TO PROPERLY APPLY R.C. 2929.14(E)(4) AND R.C. 2929.19(B)(2), THEREBY DENYING HIM DUE PROCESS AND THE OPPORTUNITY FOR MEANINGFUL APPELLATE REVIEW. U.S. CONST. AMEND. XIV; SECTION 16, ART. I, OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS SUBSTANTIALLY PREJUDICED MR. SCHEFFLER'S DEFENSE, THEREBY DENYING HIM DUE PROCESS OF LAW. U.S. CONST. AMEND. XIV; SECTION 16, ART. I, OHIO CONST.
In the early morning hours of June 10, 1998, Rick Sherman visited Kimberly Scanlon at her home in Newark. Sherman appeared to be drunk, and demanded that Scanlon accompany him to Zanesville. When she refused, he grabbed a 12-pack of beer from her refrigerator and left the home. He then made a series of threatening phone calls to Scanlon's house. At around 2:00 a.m., Scanlon called the police. Four of Scanlon's friends were present at this time: Kelly Palladino, Shawn Reilly, Roger Hoffer, and Holly Poundstone. Shortly thereafter, Sherman broke through Scanlon's front door and began threatening Scanlon and her friends. He pushed Scanlon into her refrigerator. The police arrived before anyone was hurt. Sherman was arrested and charged with aggravated burglary. The same morning, Dick Sherman, Rick Sherman's father, visited appellant's son, Eric Moehler, at his home. Moehler was a good friend of Rick Sherman. Dick Sherman asked Moehler to talk to his friends and find out what happened. After discussing the incident with Scanlon, Hoffer, and Palladino, he reported back to Dick Sherman. Dick Sherman then directed Moehler to find out "what could be done about them not testifying on Rick." Moehler suggested that he and the witnesses take a vacation. Moehler and Dick Sherman discussed how long it would take to get Moehler and the witnesses out of town, and how long they would need to be gone to protect Rick. Moehler then approached appellant to help him insure that the witnesses would have the money to leave, and there would be no problems with the plan. Appellant instructed the witnesses that they would need to be gone about 90 days, as he believed the State of Ohio would have 90 days to bring Rick Sherman to trial. Appellant told the witnesses they needed to make themselves scarce quickly, as Grand Jury subpoenas would be coming soon. The four witnesses decided to accept the offer, and agreed to go to Florida with Moehler. Moehler and appellant consulted with Dick Sherman, who agreed to give the witnesses $700. Dick Sherman made arrangements to have vehicles repaired so that the witnesses could drive their cars to Florida. The process of getting the witnesses out of town took longer than anticipated. Scanlon, Reiley, and appellant met, at which time appellant expressed frustration with Moehler's inability to get the witnesses out of town. They discussed the fact that the subpoenas were about to be served, and witnesses needed to make themselves scarce. Appellant threatened Scanlon and Reiley, saying, "Don't fuck me or I will fuck you." Arrangements were then made for the witnesses to leave the next day. During this time, the witnesses stayed at Moehler's home, in part to avoid service of subpoenas. The witnesses were unsuccessful in evading the subpoenas and ultimately testified before the Grand Jury. However, after testifying before the Grand Jury, but prior to trial, Scanlon, Hoffer, Reiley and Palladino traveled to Florida with Moehler. Eventually, Licking County officials learned the whereabouts of the witnesses. Each agreed to testify against appellant, in exchange for which none of the witnesses were charged with any crimes. Rick Sherman eventually pled guilty to burglary. Appellant was indicted on four counts of obstruction of justice, four counts of bribery, two counts of intimidation of a witness, and one count of engaging in a pattern of corrupt activity. The case proceeded to jury trial in the Licking County Common Pleas Court. During the jury deliberations, the charge of engaging in a pattern of corrupt activity was withdrawn upon motion of the State of Ohio. Subsequently, the jury found appellant guilty of all other charges, and he was convicted. The court sentenced him to three years incarceration on the four counts of obstruction of justice, to be served concurrently. Appellant was sentenced to three years incarceration on the four counts of bribery, to run concurrent with one another and concurrent with the sentences imposed for obstruction of justice. On the two counts of intimidation of a witness, appellant was sentenced to three years incarceration. These sentences were run concurrent to one another, but consecutive to the sentences imposed for obstruction of justice and bribery.
 I
Appellant argues that the court did not make the required statutory findings for imposition of consecutive sentences, and did not support its findings with specific reasons. To impose consecutive sentences, a trial court must first make a finding that consecutive sentences are necessary to protect the public or punish the offender. R.C. 2929.14(E)(4). The court must also find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Further, the trial court must find one or more of the following:
 a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Id.
Further, when imposing consecutive sentences under Section2929.14, the court must state its reasons for imposing consecutive sentences. R.C. 2929.19 (B)(2)(c). While the safest practice would be for the court to include in its written judgment entry specific findings of fact and reasons supporting the imposition of consecutive sentences, in State v. Edmonson (1999), 86 Ohio St.3d 324,326, the Ohio Supreme Court upheld that the record of the sentencing hearing must reflect that the court found either or both of the statutorily sanctioned reasons for exceeding the minimum term of incarceration. Further, the Edmonson court looked to the transcript of the sentencing hearing, and specifically the court's oral pronouncements from the bench, to determine that the requisite findings were not made. Id. at 327. As the statute concerning consecutive sentencing is substantially similar to that for exceeding the minimum term of incarceration as to the requirement that the court state it findings and reasons on the record, it appears from Edmonson that the court is not required to state its findings and reasons in a written judgment entry. The court made the following oral statement on the record at the sentencing hearing regarding consecutive sentences: With respect to the intimidation counts, the Court feels that it is appropriate, however, that these counts run consecutive with the obstruction and bribery charges. The harm that you created with respect to those charges the Court finds to be great. The threat that you made that the — those witnesses testified to was real. The Court finds that your criminal history is involved in whether or not sentences should be consecutive or counts should be consecutive as well, and the Court determines that Counts 9 and 10, the intimidation counts, consecutive sentence is necessary to fulfill the purposes of the sentencing bill."
Transcript of Proceedings on June 11, 1999, at 11-12.
In the trial court's Judgment Entry, the trial court found, as to consecutive sentences: The Court determines consecutive sentences are necessary for the following reasons: (1) Harm caused was great and unusual; (2) Offender's criminal history requires consecutive sentences; and consecutive sentences are necessary to fulfill the purposes of O.R.C. Section 2929.11.
Appellant argues that the court did not make the statutorily required findings that consecutive sentences are necessary to protect the public or punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In its sentencing entry, the trial court found that consecutive sentences are necessary to fulfill the purposes of R.C. 2929.11. R.C. 2929.11 (A) provides that the overriding purposes of felony sentencing are to protect the public from future crimes by the offender, and to punish the offender. Therefore, the court implicitly made a finding that consecutive sentencing was necessary to protect the public and punish the offender. While the court did not use the statutory language to find that consecutive sentences are not disproportionate to the seriousness of appellant's conduct and the danger appellant poses to public, such finding is implicit in the trial court's comments from the bench at the sentencing hearing. The court stressed the seriousness of appellant's conduct with respect to the intimidation counts. Further, immediately before the court's oral pronouncement from the bench concerning consecutive sentences, the court stated that while burying appellant with the sentence was not the purpose of the court, the court felt the punishment had to fit the crime, and the court would be attempting to do this. Tr. 11. While the better practice would be to use the statutory language in making the requisite findings, the concept of disproportionality was considered by the court in determining that consecutive sentencing would be appropriate. Appellant also argues that the court failed to support its findings with specific reasons. We disagree. The court found that with respect to the two counts of intimidation, the harm caused to the victims was great, and the threat was real. The court further considered appellant's criminal history. In addition, at the beginning of the court's comments at the sentencing hearing, the court noted that while the judicial system and everyone connected with the system are the victims in the case, appellant had created other victims by involving them in his scheme. The court stated sufficient reasons on the record to support the finding that a consecutive sentence would be appropriate. The first assignment of error is overruled.
 II
Appellant argues that the prosecutor committed misconduct during closing argument. Appellant argues that the prosecutor vouched for the credibility of witnesses, erroneously instructed the jury concerning matters of law, and testified to facts not in evidence. The test for prosecutorial misconduct is whether the remarks are improper, and if so, whether they prejudicially affected substantial rights of the accused. State v. Lott (1991), 51 Ohio St.3d 160,165, cert. denied. (1990), 498 U.S. 1017. An attorney must be given wide latitude during closing argument, and the remarks during closing argument must be viewed in the context of the entire argument. State v. Landrum (1990), 53 Ohio St.3d 107,112. The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. Id. The prosecutor must avoid assertions which are calculated to mislead the jury, and is not to allude to matters which will not be supported by admissible evidence. State v. Smith (1984), 14 Ohio St.3d 13, 15. It is improper for an attorney to express his personal beliefs or opinion as to the credibility of a witness, or as to the guilt of the accused. Id. We note at the outset that counsel for appellant failed to object to the complained of comments at trial. Therefore, he must demonstrate plain error. Notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Appellant claims the prosecutor improperly vouched for the credibility of Tracey Howell. During closing argument, the prosecutor stated, "If that wasn't an honest women who was torn between her father and doing what is right . . . you've never seen one." Tr. 986. Viewed in the context of the entire argument, this comment was not improper. The prosecutor was countering appellant's claim that Tracey Howell, appellant's daughter, was bitter. The prosecutor was countering this claim by arguing that Tracey was an honest woman, who was very distressed by having to testify against her father. Appellant argues that the following comments by the prosecutor were improper: "I'll tell you what, I've been doing this 12 years, if we were inclined to put words into witnesses' mouths, we would have had all four of them say I had direct contact with Dick Sherman, I had detained [sic] conversations with Bill Scheffler, and, you know, that they both handed me money directly at one point or another, they have both threatened me on repeated occasions. But you don't have any evidence of that, do you?
They described their relative involvement, their relative contact with this defendant, and when they said, well, nobody threatened me, I didn't feel threatened, they were being honest with you. Nobody put words in their mouth to say that." Tr. 987. These comments by the prosecutor did not improperly vouch for the credibility of his witnesses. The prosecutor was merely arguing that if the State told the witnesses what to say, their testimony would have been more favorable to the State. Appellant next argues that the prosecutor improperly misled the jury, by contending that his witnesses had no incentive to falsely accuse appellant of wrongdoing, as they could not be charged with any crimes for their conduct. Reviewing the closing argument as a whole, the prosecutor represented to the jury that the witnesses had exposed themselves to criminal liability, but had been told that if they testified, they would not be prosecuted. Specifically, the prosecutor stated in closing argument that when considering the credibility of these witnesses, the jury should consider that the witnesses had been exposed to criminal liability, but the prosecutor had represented that they would not be charged if they agreed to testify against appellant. The prosecutor clearly stated to the jury that the decision not to prosecute was made by the prosecutor, and did not mislead the jury into believing the witnesses had never been exposed to criminal liability. Appellant next argues the prosecutor committed misconduct in asserting that the testimony of Moehler was sufficient to convict appellant on all charges. In its brief, the State concedes that appellant could not be convicted of all pending charges based solely upon testimony of Moehler. However, in closing argument, the prosecutor did state that legally speaking, they could have put Eric Moehler on the stand and rested, as if the jury believed Eric Moehler, there was legally sufficient evidence to convict appellant. Tr. 986. Appellant has not demonstrated prejudice from this single isolated comment. The court informed the jury that it would instruct the jury on the law, and it was the province of the jury to apply the law to the facts. Appellant argues that the prosecutor committed misconduct by claiming that Holly Poundstone's testimony could not have proven that Rick Sherman was guilty of trespass, as Poundstone did not live at the home where Sherman trespassed. Tr. 1026-27. In closing argument, appellant's counsel argued that a scheme to prevent the prosecution of Sherman was unlikely, as Poundstone, who witnessed Sherman's actions, was never a part of the alleged plan by appellant to assist witnesses in evading the service of subpoenas. Counsel for appellant argued that Rick Sherman could have been convicted on Poundstone's testimony alone. Counsel essentially argued that there could not have been a plan to get all the witnesses out of town, as an important witness was not part of such plan. In rebuttal, the State responded that Poundstone's testimony could not have proven a criminal offense against Sherman, as Poundstone was not a resident of the home where the alleged trespass took place. Counsel for appellant objected, and a conference was held at the bench. This conference was not preserved for the record. While the prosecutor did not correctly state the law in the challenged comment, appellant has not demonstrated prejudice. The jury was instructed to consider only the evidence presented at trial in determining the facts, and was instructed to apply the facts to the law as provided by the court. There was overwhelming evidence of appellant's guilt from the testimony of Scanlon, Reiley, Palladino, and Hoffer. Absent the prosecutor's comments, it is clear that the jury would have convicted appellant. Finally, appellant argues that the cumulative effect of all the challenged remarks denied him a fair trial and constituted plain error. Having found no prosecutorial misconduct in any of the challenged comments, the cumulative effect of such comments did not constitute error. In his reply brief, appellant for the first time argues that his attorney was ineffective for failing to object to the prosecutorial misconduct assigned as error in this appeal. Pursuant to App.R. 16 (C) we need not consider this argument, as reply briefs are for the purpose of rebutting arguments, or responding to cross-appeals raised in the appellee's brief. Hill v. Urbana (1997), 79 Ohio St.3d 130. In any event, having found no prejudicial error in any of the comments of the prosecutor, appellant could not demonstrate that he was prejudiced by counsel's failure to object, as required by Strickland v. Washington (1984), 466 U.S. 668. Appellant has not demonstrated that but for counsel's failure to object, the result of the proceeding would have been different. Id. The second assignment of error is overruled.
The judgment of the Licking County Common Pleas Court is affirmed.
 __________________ GWIN, P.J.
Gwin, P.J., Wise, J., concur Edwards, J., dissents in part; concurs in part.