The STATE of Ohio, Appellee,

v.

BINGMAN, Appellant.

[Cite as *State v. Bingman,* 149 Ohio App.3d 243, 2002-Ohio-2885.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010704.

Decided June 14, 2002.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Thomas J. Boychan Jr., Assistant Prosecuting Attorney, for appellee.

Cathy R. Cook, for appellant.

---

HILDEBRANDT, Judge.

{¶ 1} Defendant-appellant, Charles W. Bingman, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of rape in violation of R.C. 2907.02(A)(1)(b). For the following reasons, we affirm the trial court's judgment.

{¶ 2} In August 2001, Bingman was indicted for one count of rape, five counts of gross sexual imposition, and one count of disseminating matter harmful to a minor. Bingman's counsel requested and received discovery from the state and held lengthy negotiating sessions with the prosecution in the trial court's chambers. On September 17, 2001, defense counsel and the prosecutor informed the court that they had reached a plea agreement. The rape charge was to be reduced from one requiring the imposition of a life sentence, and the remainder of the charges in the indictment were to be dismissed. In addition, the state agreed to recommend a sentence of seven years' incarceration.

{¶ 3} Pursuant to the agreement, Bingman pleaded guilty to having performed cunnilingus on the victim, a seven-year-old child to whom Bingman had given piano lessons. The trial court scheduled sentencing for October 10, 2001. On September 24, 2001, Bingman filed a motion to continue the scheduled sentencing date because October 10 was a Jewish holiday. The court granted the motion, ordering the sentencing date postponed until October 11, 2001.

{¶ 4} On October 5, 2001, the attorney who had negotiated the plea agreement with the state filed a motion to withdraw as counsel. That motion was granted, and Bingman's newly retained attorney was substituted as counsel of record. Then, on October 9, 2001, Bingman's new counsel filed a motion to continue the sentencing on the basis that Bingman's former counsel had not adequately investigated the charges against him and that Bingman had misgivings about accepting the plea agreement. Counsel requested a 30–day continuance to investigate, among other items, the records of Children's Hospital Medical Center and the Hamilton County Department of Jobs and Family Services, to determine if the plea agreement was in Bingman's best interest.

{¶ 5} The trial court held a hearing on the motion for a continuance on October 11, 2001. After hearing the arguments of defense counsel and the prosecutor, the trial court overruled the motion and sentenced Bingman to the agreed term of seven years' incarceration.

{¶ 6}  In a single assignment of error, Bingman now argues that the trial court erred in overruling his motion to continue the sentencing.  We find no merit in the argument.

{¶ 7}  In deciding a motion for a continuance, the trial court is to consider the following factors:  the length of the requested delay;  whether other continuances have been granted;  the inconvenience to the litigants, witnesses, opposing counsel, and the court;  whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived;  whether the defendant has contributed to the circumstances giving rise to the requested delay;  and any other relevant factors.[1]  The decision to grant or deny a continuance is within the discretion of the trial court and will not be reversed absent an abuse of that discretion.[2]  The term "abuse of discretion" means more than a mere error of law or judgment;  it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.[3]

{¶ 8}  In the case at bar, we cannot say that the trial court's denial of the motion for a continuance was an abuse of discretion.  Although the requested delay was for a relatively short period of time, Bingman had already received one continuance.  Persons involved in the investigation and the prosecution of the offense, including the victim, were present in court on October 11 and could have rightfully wished the matter to be concluded on the scheduled day.

{¶ 9}  While newly retained counsel forcefully argued that further investigation of the state's evidence was necessary, the trial court was not unreasonable in finding that Bingman's former counsel had diligently performed his duties.  Bingman's first counsel was an experienced and highly qualified attorney and had pursued discovery and extensive discussions with the state.  Moreover, he had successfully negotiated a plea agreement pursuant to which six charges were dismissed and the penalty for the remaining charge had been reduced from a life sentence to an agreed seven-year term.

{¶ 10}  In addition, Bingman could have expressed his reservations concerning the plea agreement at the plea hearing itself, and he failed to do so.  The trial court meticulously complied with Crim.R. 11 and took every measure to ensure that Bingman wished to enter a guilty plea.  Bingman, a college graduate, repeatedly informed the court that his plea was being entered knowingly and voluntarily, and he also stated that he was satisfied with the performance of his

---

**1.**  *State v. Unger* (1981), 67 Ohio St.2d 65, 67–68, 21 O.O.3d 41, 423 N.E.2d 1078.

**2.**  Id. at 67, 21 O.O.3d 41, 423 N.E.2d 1078.

**3.**  *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

first attorney.[4]   Although he later intimated in his written motion that his misgivings had arisen after he had tendered the plea, the trial court had done everything in its power to ensure that Bingman had considered any potential misgivings before accepting the plea agreement.   Thus, the court could have reasonably found that Bingman had contributed to the circumstances giving rise to the request for the continuance.

{¶ 11}   Finally, this court has reviewed the material that Bingman's second attorney purportedly wished to examine to determine the propriety of the guilty plea, and we can perceive no evidence that would have arguably been exculpatory or that would have provided a basis for a motion to withdraw the guilty plea. The investigative material, some of which the trial court sealed,[5] tended to corroborate the victim's allegations that the rape had occurred.   Accordingly, we find no abuse of discretion in the trial court's ruling that the motion for a continuance was without merit.   The assignment of error is overruled, and the trial court's judgment is affirmed.

Judgment affirmed.

SUNDERMANN, J., concurs.

PAINTER, P.J., dissents.

MARK P. PAINTER, Presiding Judge, dissenting.

{¶ 12}   A person was indicted for a serious crime and hauled off to prison 65 days later.   He had asked for a short continuance, which was denied.   If ever a case exemplified a rush to judgment, this is the case.   Bingman may well have deserved the sentence, but he certainly had the right to a short continuance.

{¶ 13}   Only one month passed between Bingman's indictment and his plea of guilty;   only 56 days passed between the indictment and his second continuance motion.

{¶ 14}   Bingman's new counsel argued that based on her experience handling sex-related crimes, she needed to review documents not contained in Bingman's file in order to advise him whether a guilty plea was in his best interest.

---

**4.** Although Bingman emphasizes that he merely stated, "I think so," when asked if he was satisfied with his attorney's performance, he had ample opportunity to inform the court of any perceived deficiencies in the representation or of any other concerns at the plea hearing.   His asserted lack of experience with the criminal justice system did not prevent him from expressing his concerns when questioned by the trial court.

**5.** Bingman's second attorney had issued subpoenas for records from Children's Hospital and the Department of Jobs and Family Services, but the trial court refused to let counsel review that material.   Bingman does not assign any error concerning that ruling.

Specifically, she determined that certain drawings had not been produced in discovery and that the file had not contained the incident report from the police.

{¶ 15} Bingman was not asking to withdraw his plea. If he had been, the court would have been required to "freely and liberally" consider granting it.[6] But he was asking only for an opportunity for his lawyer to review the evidence and advise him whether his plea was proper. It is quite likely that counsel might have advised him to stand on his plea—and nothing would have been lost but 30 days.

{¶ 16} While whether to grant a continuance rests in the trial court's discretion, the discretion is not unlimited. In *State v. Green*,[7] the Ohio Supreme Court reiterated the analysis applicable to the review of a denial of a continuance. Whether the denial of a continuance was so arbitrary that it violates due process depended on the circumstances, especially the reasons given at the time of the denial. Relevant factors to be considered included the length of the delay requested, whether there has been prior continuances, inconvenience, the reason given for the delay, and whether the defendant has contributed to the delay.[8] The trial court had the responsibility to weigh the potential prejudice to Bingman, and "[a] myopic insistence upon expeditiousness in the face of a justifiable * * * delay can render the right to defend with counsel an empty formality."[9]

{¶ 17} The delay requested by Bingman's counsel was reasonable because (1) only 4 days before the request, the trial court had allowed Bingman's prior counsel to withdraw; (2) the state had not yet provided new counsel with certain evidence; (3) the only prior continuance had been one day because of a religious holiday (4) the request was for only 30 days; (5) only a short time had passed since the indictment; (6) Bingman's counsel believed that she could not advise him on whether he should withdraw his plea to a serious offense without the continuance; and (7) there was no assertion of inconvenience to the state or the court other than the state's comment that the victim and her family, who were present, expected Bingman to be sent to prison that day. Opposed to those seven good reasons stands—nothing.

---

6. See, e.g., *State v. Fish* (1995), 104 Ohio App.3d 236, 661 N.E.2d 788; *State v. Griffin* (2001), 141 Ohio App.3d 551, 752 N.E.2d 310.

7. *State v. Green* (2000), 90 Ohio St.3d 352, 368, 738 N.E.2d 1208, quoting *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921.

8. Id., citing *State v. Landrum* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710.

9. *Ungar v. Sarafite*, supra, 376 U.S. at 589, 84 S.Ct. at 849, 11 L.Ed.2d 921.

{¶ 18} Shockingly, the majority uses as a reason for its affirmance that "Bingman had already received one continuance." This was *one day* for a religious holiday.

{¶ 19} If this denial is not an abuse of discretion, I cannot fathom what would be. There was no excuse for the trial court's unreasonable and arbitrary decision—or for the unreasonable and arbitrary decision of this court to connive in this rush to judgment and denial of due process.