[Cite as *In re R.F.*, 2021-Ohio-3174.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

IN THE MATTER OF:

R.F., ABUSED AND
DEPENDENT CHILD

CASE NO. 2021-L-048

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2019 AB 00700

**O P I N I O N**

Decided: September 13, 2021
Judgment: Affirmed

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123
(For Appellant).

*Christopher J. Boeman*, Lake County Department of Job & Family Services, 177 Main
Street, Painesville, OH 44077 (For Appellee).

*Pamela D. Kurt*, Kurt Law Office, LLC, 4770 Beidler Road, Willoughby, OH 44094
(Guardian ad Litem)

MATT LYNCH, J.

{¶1} Appellant, Nina Hein, appeals the grant of permanent custody of the minor
child, R.F. (dob 06/14/2019), to appellee, the Lake County Department of Job and Family
Services. For the following reasons, we affirm the judgment of the court below.

{¶2} Lake Job and Family Services initiated the present action on June 18, 2019,
four days after R.F.'s birth, by filing a complaint in the Lake County Court of Common

Pleas, Juvenile Division, alleging R.F. to be abused and dependent. R.F. was subsequently adjudicated to be abused and dependent as defined in R.C. 2151.031(D) and R.C. 2151.04(C) respectively and placed in the temporary custody of Lake Job and Family Services.

{¶3} On November 20, 2020, Lake Job and Family Services filed a Motion for Permanent Custody. A hearing was held on March 19, 2021, and the trial court granted the Motion. The court memorialized the proceedings as follows:

> Joy Biggs of the Lake County Department of Job and Family Services testified that she is an ongoing social worker assigned to the [R.F.] case. The child was assigned to her when he was born on June 14, 2019. Emergency temporary custody was granted to the Department on June 18, 2019. Nina Hein is the mother. Clifford Felden was alleged to be the child's father.
>
> The child was exhibiting withdrawal symptoms from drugs upon birth. On June 19, 2019, a Magistrate held a 72 hour hearing. The Magistrate ordered temporary custody to the Department. An Amended Complaint was filed on June 21, 2019. The child's name was changed from "Baby Boy Hein" to "[R.F.]."
>
> The [c]ase plan required mom to have drug and alcohol assessments and follow recommendations; abstain from using drugs and alcohol and sign all necessary releases. The mental health needs and housing needs of the child were to be met. The child was released from the hospital on June 25, 2019 to foster care. After genetic testing, Mr. Felden was determined not to be the father of [R.F.]. He was removed as a party to the case.
>
> On August 2, 2019, an Adjudication was held. [R.F.] was found to be abused and dependent. The sunset date was established as June 18, 2020. Mother did not see the child nor provide for the child from the day the child left the hospital until the day the case was no longer assigned to Ms. Biggs, which was September, 2019. Ms. Hein had a felony drug charge pending at the time. Ms. Hein filed for intervention in lieu of conviction before Judge Lucci. When she did not show up for her hearing on April 26, 2018, Judge Lucci issued a warrant for her arrest. On May 11, 2018, Ms. Hein [pled] guilty to Possession of Heroin, a felony of the 5th degree. On June 28, 2018,

2

Ms. Hein was sentenced to two (2) years of community control and a treatment plan. On November 27, 2018[,] an arrest warrant was issued for the arrest of Nina Hein for probation violations, new charges and a urine test that came back positive for heroin.

On December 6, 2018, an Amended Judgment Entry was filed giving Ms. Hein another chance. On January 11, 2019, Judge Lucci revoked Ms. Hein [sic] for violating the terms of her probation for testing positive for heroin. The State also supplemented its motion because there was another positive heroin test. Thereafter, on February 1, 2019, Judge Lucci set no bond for Ms. Hein. On March 11, 2019, Ms. Hein [pled] guilty to violating probation. She received two (2) additional years of probation, treatment at Hitchcock House for a minimum of four (4) months, attend a minimum of three (3) AA meetings per week. Another probation violation was filed on April 22, 2019[,] because Ms. Hein left Hitchcock House against the advice of the treatment center. In May, 2019, Ms. Hein asked that her bond be reinstated because she was in a different treatment center and she was thirty-six (36) weeks pregnant. The motion was denied on December 30, 2019. A warrant was issued for the arrest of Ms. Hein. Ms. Hein was arrested on the warrant on October 29, 2020. In November, 2020, a violation of probation was filed for Ms. Hein testing positive for cocaine and marijuana. On December 29, 2020, Nina pled guilty. Ms. Hein's probation was extended, she was ordered to the jail treatment program, to go to NEOCAP, serve sixty (60) additional days in jail with the jail transitional program.

The maternal grandmother had visitation in the matter mainly to allow sibling visitation. Maternal grandmother has not filed for custody or visitation in this case as it relates to [R.F.].

Stacy DeLeone, the ongoing social worker on [R.F.'s] case, testified that she began as the caseworker in August, 2019. [R.F.'s] date of birth is June 14, 2019. Maternal Grandmother, Nancy Stock, had custody of [R.F.'s] sister, [A.C.], date of birth: December 11, 2015. A referral was received that Maternal Grandmother's home conditions were unsanitary. Ms. DeLeone and a police officer went to Grandmother's home. There was an overwhelming smell of urine, piles of trash, dirty dishes, animal cages, [and] animal feces all over the floor of Grandmother's home. The police officer pointed out that the animals all looked sick. There was no place to sit. Grandmother had to clear the way to see [A.C.'s] room. From the amount of stuff in [A.C.'s] room it would not be possible to get into it. The witness believed it to be a fire hazard. They went outside to talk. Ms. DeLeone looked at [A.C.] and saw something moving in her hair.

3

She found lice and other bugs in her hair. Ms. DeLeone testified that it was the worse [sic] bug infestation she had ever seen.

On August 21, 2019, the Department asked for emergency temporary custody [of A.C.]. Ms. DeLeone testified that Grandmother's home was not an appropriate place for a child or infant to go. Emergency temporary custody was granted. Temporary custody was continued to the Department after the 72 hour hearing. The Department did not know where Mother was. Ms. DeLeone called the Hitchcock Treatment Center. Mother was not there. Ms. Stock did not come to the 72 hour hearing on [A.C.]. Ms. Hein also did not come to that hearing.

Ms. DeLeone took both [A.C.] and [R.F.'s] case onto her caseload by September, 2019. After Mr. Felden was determined not to be [R.F.'s] father, he has had no contact with the child or the Department. Mom was/is not doing any work on the case plan filed in [A.C.] or [R.F.'s] cases. Mom failed to appear at the July 31, 2020 hearing on the Motion to Extend Temporary Custody. Ms. DeLeone testified that Ms. Hein was missing, has had no contact with the Department, [and] has * * * not had visitation with either [A.C.] or [R.F.]. Ms. DeLeone first saw Ms. Hein in January, 2021 at the Lake County Jail.

Ms. Stock had case plan goals of having a mental health assessment and follow all of the recommendations and to provide stable housing. Ms. Stock is not case plan compliant. [R.F.] and [A.C.] are still in the temporary custody of the Department. The Department cannot reunify the children with Nina Hein because she has been missing and she has not been case plan compliant.

Reunification is not possible with Ms. Stock because * * * the home conditions were so deplorable and then she was homeless, then she provided an address on Gillette Street in Painesville, Ohio.

Mother has had no contact with the children since June, 2019. She has not provided any other type of support. Ms. Stock was having weekly visitation with [A.C.] and a few times per month with [R.F.]. After COVID, they did zoom visits. Ms. Stock would miss visits and Court hearings because of illness.

The Department looked toward relatives for placement. Six (6) people on the maternal side were reached out to for placement. No one responded. Discussions were had with Maternal Grandmother

4

about other relatives.  Grandmother said Raytrisha Weatherless, a close family friend, would help.  The Department did a home study and it was not approved.  Ms. DeLeone looked to find the father of [R.F.] via Facebook through the Posey Facebook page and through the Salvation Army where an alleged father allegedly worked and they checked the putative father registry.

* * *

Michelle Rydzinski testified that [R.F.] is her foster son.  She is a certified foster parent in the State of Ohio.  Ms. Rydzinski testified that [R.F.] was placed with her on June 24, 2019.  [R.F.] has been with her ever since.  She, her daughter, and [R.F.] live in the home.  Her daughter is six (6) years old.  [R.F.] is twenty-one (21) months old. Ms. Rydzinski is a foster to adopt foster home.  She would adopt [R.F.].  As long as it is a safe and sober environment, she would allow contact after adoption.  Ms. Rydzinski testified that no family member has supplied any support or gifts to her for [R.F.].

Nina Hein testified she has been at NEOCAP for the last three (3) weeks.  She has three (3) children.  [R.F.], [A.C.], and [D.V.].  She has been at Hitchcock House, Stepping Stones and Moms to Be.  * * *  She testified that her criminal attorney at the Public Defender's Office and TJ, the social worker at the Public Defender's Office[,] knew where she was and were helping her.

Nina testified that she no longer qualified for the Moms to Be program so she went to California.  Someone paid for her flight.  Her boss was violent and controlling.  She doesn't feel that she abandoned her children because this was not of her free will.  At NEOCAP they have one-on-one therapy with a counselor and a case manager[,] group therapy and mental health assessments.

Nina testified that she is going to live at 1740 Mentor Avenue, Painesville, Ohio, when she gets out of NEOCAP.  Her dog is staying there and someone takes care of the dog.  She only has to pay $300 per month.  Ms. Hein is 30 years old.  She was on methadone from 2014 to 2019, roughly five (5) years.

Ms. Hein testified that she was a bartender at The Executive's Den.  A man gave her money to go to California.  Ms. Hein testified that while in California, she was forced to engage in sexual activity for money that she did not receive.  She testified that she could not

5

communicate with anyone "in the world". She testified that the place where she lived was close to a military base and the military was somehow involved in the sex trafficking.

The Guardian ad Litem submitted her pre-hearing report and recommendation regarding permanent custody, on February 9, 2021, pursuant to law.

The Court, having previously adjudicated [R.F.], date of birth: June 14, 2019 to be an abused and dependent child, finds that reasonable efforts have been made to avoid continued removal of the child; however, to be in the parents' home would be contrary to his best interest. Neither mother or father are able to care for the child, nor will they be able to do so within a reasonable period of time.

Based upon the testimony and evidence presented and the recommendation of the Guardian ad Litem, the Court further finds, by clear and convincing evidence, that it is in the best interest of [R.F.] * * * that permanent custody be granted to the Lake County Department of Job and Family Services. Therefore, the Court finds the Lake County Department of Job and Family Services' Motion for Permanent Custody file[d] November 20, 2020, to be well taken and granted.

{¶4} On April 16, 2021, Hein filed a Notice of Appeal. On appeal, she raises the following assignments of error:

{¶5} "[1.] The trial court erred by granting permanent custody of R.F. to the Lake County Department of Jobs and Family Services contrary to the manifest weight of the evidence."

{¶6} "[2.] The trial court erred when it denied the joint motion to continue the permanent custody trial in violation of the appellant's right to due process."

{¶7} The trial court may grant a motion for permanent custody "if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent

6

Case No. 2021-L-048

custody" and "the child is abandoned" or "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period."  R.C. 2151.414(B)(1)(b) and (d).

{¶8}    Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  (Citation omitted.)  *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42.

{¶9}    Under the first assignment of error, Hein argues that the trial court's best interest determination is not supported by the weight of the evidence "because a legally secure permanent placement for R.F. could have been achieved without a grant of custody to [the Department]."  Appellant's brief at 3; R.C. 2151.414(D)(1)(d) ("[i]n determining the best interest of a child * * * the court shall consider all relevant factors, including * * * [t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency").

{¶10}   Hein claims that she was in a position to be considered for reunification: she was participating in NEOCAP and counseling; she was being treated for her mental health issues; and she had housing suitable for R.F.  The record does not support Hein's claims. At the time of the hearing, Hein was still serving her sentence for violating her community control and had only been in the NEOCAP program for three weeks.  There was no fixed date for her completion of the program although a period of six months is typical.

7

Moreover, as observed by the trial court, upon completion of NEOCAP, Hein was ordered "to serve an additional sixty (60) days in the Lake County Jail and * * * participate in the Transitional Day Reporting Program." The housing she claimed to have available had not been verified, inspected, or approved by Lake Job and Family Services. According to her own testimony, the housing was a two-bedroom trailer being held through "a circle of friends" and paid for with "corona stimulus income."

{¶11} Hein also claims that Lake Job and Family Services did not make reasonable efforts to reunify the family prior to the termination of parental rights. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 4. Specifically, Lake Job and Family Services did not attempt reunification with the maternal grandmother (Stock) and made only minimal efforts to locate the biological father. Again, these claims are not supported by the record. Stock had custody temporarily of R.F.'s sibling, A.C., but lost custody because of unsuitable housing conditions. There was no evidence at the hearing suggesting that A.C. could or would be returned to Stock's custody. Moreover, there was testimony at the hearing that, although Stock was represented by counsel in the proceedings involving A.C., she never moved the court for custody of or visitation with R.F. or otherwise to be made a party in R.F.'s case. With respect to the potential biological father, DeBrosse, DeLeone testified that she had posted three messages to his Facebook page requesting that he contact Job and Family Services but received no response. She made efforts to locate DeBrosse physically through his employment, his mother, and the child support agency but without success. DeLeone testified that she also googled DeBrosse without result. Hein testified to the contrary that she was able to locate DeBrosse by googling and that he has a criminal record. No physical address for

8

DeBrosse, however, was provided to Job and Family Services or the court. Hein also testified that DeBrosse "is aware of" R.F. We find that Job and Family Services' efforts were reasonable and that any fault for R.F. not being placed with Stock or DeBrosse lies with Stock and DeBrosse. Stock has not requested custody of R.F. and has been determined by Job and Family Services not to be a suitable option for placement. DeBrosse is aware of R.F. and has been contacted by Job and Family Services but has not responded.

{¶12} Assuming, arguendo, that Hein has made substantive progress towards being able to effectively parent R.F. and that there was more that Lake Job and Family Services could have reasonably done to place R.F. with family, such considerations are outweighed in the analysis of R.F.'s best interests by the fact of Hein's abandonment of R.F. R.C. 2151.414(D)(1)(e), (E)(4) ("[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so"), and (E)(10) ("[t]he parent has abandoned the child"). The evidence is uncontroverted that from the date of R.F.'s release from the hospital (June 24 or 25, 2019) until the date of the permanent custody hearing (March 19, 2021) Hein had no contact with R.F. While there were circumstances which, at times, may have made it impossible for her to contact or otherwise support R.F., they do not justify the complete absence of all contact or support during this twenty-one-month period.

{¶13} The first assignment of error is without merit.

{¶14} Under the second assignment of error, Hein argues the trial court erred by overruling the joint request for a continuance of the permanent custody hearing due to the maternal grandmother's hospitalization.

9

{¶15} "Continuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 23. "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* at 67. Additional factors to consider include: "the length of the delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum*, 53 Ohio St.3d 107, 115, 559 N.E.2d 710 (1990).

{¶16} On March 18, 2021, the day before the joint permanent custody hearing for R.F. and A.C., Stock filed in both cases a written motion to continue the hearing on the grounds that she "has been admitted to Tri-Point for complications with her illness and is not expected to be released in time for the Trial." Prior to the commencement of the hearing, counsel for Hein joined Stock's motion and argued that Stock was an "integral part" and a "witness to the issues" in R.F.'s case. The trial court granted the continuance with respect to A.C.'s case but denied the continuance with respect to R.F.'s case.

{¶17} The trial court stated as cause for denying the continuance that Stock was not a party to R.F.'s case. The court also complained that it had "little information" regarding Stock's illness and, therefore, the length of the continuance was indeterminate. As Hein was still in custody, arrangements were and would be necessary for her conveyance to the hearing. The hearing had been twice continued already: once on motion by Hein's attorney on the grounds that she was in quarantine and another time on motion by Stock on the grounds that she had a doctor's appointment. The "sunset date"

of June 18, 2021, i.e., the date on which the grant of temporary custody to Lake Job and Family Services would expire, was a month away. R.C. 2151.353(G) ("the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed"). We note, further, that no proffer as to what Stock's testimony would be was made. The facts that A.C. had been removed from Stock's custody, Stock had not attended R.F.'s 72 hour and adjudicatory hearings, and she had not moved to intervene in R.F.'s case were not in dispute. Considering all relevant factors, we find no abuse of discretion.

{¶18} For the foregoing reasons, the grant of permanent custody of R.F. to Lake Job and Family Services is affirmed. Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

Case No. 2021-L-048